UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____

|  |  |
|---|---|
| Johnny Brooks, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| Wheelabrator Bridgeport, LP, | ) |
| Wheelabrator Connecticut, Inc., & | ) |
| Wheelabrator Technologies, Inc. | ) |
| | ) |
| Defendants | ) |

_____)

## **COMPLAINT AND JURY DEMAND**

### **Parties**

1.     Plaintiff Johnny Brooks ("Mr. Brooks" or "Plaintiff") is a male resident of the

State of Connecticut, residing at 5 Marina Court, Meriden, Connecticut, 06451.

2.     Defendant Wheelabrator Bridgeport LP ("Wheelabrator Bridgeport") is a for

profit corporation that, upon information and belief, is incorporated in the State of Delaware and

its principal office is located at 100 Arboretum Drive, Portsmouth, New Hampshire, 03801.

During all relevant times, Wheelabrator Bridgeport did business withing, and employed

individuals in, the State of Connecticut, including Mr. Brooks.

3.     Defendant Wheelabrator Technologies Inc. ("Wheelabrator Technologies") is a

for profit corporation that, upon information and belief, is incorporated in the State of Delaware

and its principal office is located at 4 Liberty Lane W, Hampton, New Hampshire, 03843.

During all relevant times, Wheelabrator Technologies did business within, and employed

individuals in, the State of Connecticut, including Mr. Brooks.

4.      Defendant Wheelabrator Connecticut Inc. ("Wheelabrator CT") is a for profit corporation that, upon information and belief, is incorporated in the State of Delaware and its principal office is located at 4 Liberty Lane W, Hampton, New Hampshire, 03843.  During all relevant times, Wheelabrator CT did business within, and employed individuals in, the State of Connecticut, including Mr. Brooks.  Wheelabrator Bridgeport, Wheelabrator Technologies, and Wheelabrator CT, both individually and collectively, "Defendants" or the "Company."

## Jurisdiction and Venue

5.      The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq.* and the federal Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

6.      This court has personal jurisdiction over the Defendants because the Defendants have engaged in and transacted business in the State of Connecticut, including by owning, managing and/or operating a facility located at 6 Howard Avenue, Bridgeport, Connecticut 06605 and/or by employing the Plaintiff in Connecticut, and the Plaintiff's causes of action stem largely from business transactions and employment actions by Defendants within the State of Connecticut.  Indeed, the Plaintiff was employed by the Defendants in the State of Connecticut, was managed and reprimanded by the Defendants in the State of Connecticut, and was terminated by the Defendants in the State of Connecticut.

## Statement of Facts

7.      On or around July 30, 2001, Mr. Brooks began employment for the Defendants as a lead laborer in Bridgeport, CT.

8.      During his employment, Mr. Brooks was jointly employed by Wheelabrator Bridgeport, Wheelabrator Technologies, and Wheelabrator CT.

9.      During his employment, Wheelabrator Bridgeport, Wheelabrator Technologies, and Wheelabrator CT were so interrelated that they should be considered a single employer and/or joint employers of Plaintiff.

10.     Indeed, Wheelabrator Bridgeport, Wheelabrator Technologies, and/or Wheelabrator CT share either a mailing address of Liberty Lane, Hampton, New Hampshire 03842 and/or a principal business address of 100 Arboretum Drive, Suite 310, Portsmouth, New Hampshire 03801. Upon information and belief, Wheelabrator Bridgeport, Wheelabrator Technologies, and Wheelabrator CT have the same or similar President, Treasurer, and Secretaries, among other principals.

11.     Upon information and belief, Wheelabrator Bridgeport, Wheelabrator Technologies, and/or Wheelabrator CT each maintain and/or maintained Mr. Brooks' employment records and, upon information and belief, had control of Mr. Brooks' terms and conditions of employment, including firing decisions.

12.     Throughout his employment, Mr. Brooks primarily worked out of a Company facility located at 6 Howard Avenue, Bridgeport, CT, 06605.

13.     At all relevant times, the Defendants (including collectively, and each individually) employed 15 or more employees for 20 or more calendar weeks in the preceding 12 months.

14.     The Defendants (including each of Wheelabrator Bridgeport, Wheelabrator Technologies, and Wheelabrator CT, both individually and collectively) constituted a single integrated employer for the purpose of the Family and Medical Leave Act ("FMLA").

15.     Indeed, at all relevant times, the Defendants (both individually and collectively) were engaged in an industry affecting commerce and employed 50 or more employees during 20 or more calendar weeks in each current and/or preceding calendar year.

16.     Accordingly, the Defendants were (both collectively and each individually) a covered employer under the FMLA.

17.     At all relevant times, Mr. Brooks was a qualified employee, and his job performance was satisfactory.

18.     Mr. Brooks, due to his satisfactory job performance, was in fact promoted during the course of his employment to a utility operator position.

19.     Indeed, Mr. Brooks often received commendations for his good performance by the operations manager (and his direct supervisor), Anthony Morzello ("Mr. Morzello").

20.     Mr. Morzello is a non-disabled employee of the Defendants.

21.     In or around August 2018, Mr. Brooks began experiencing debilitating abdominal pain.

22.     Mr. Brooks disclosed to Mr. Morzello that he was experiencing unfamiliar and debilitating pain in his abdominal area and requested leaving work early in order to seek medical attention.

23.     Mr. Morzello was aware of the nature of Mr. Brooks' medical request and granted this request.

24.     Mr. Brooks was subsequently diagnosed with a Type IV hiatal hernia stemming from his abdomen.

25.     A Type IV hiatal hernia occurs when the majority of the stomach begins to herniate up into the thorax, straining an individual's internal organs and leading to complications such as dysphagia, regurgitation, chest pain, severe abdominal pain, and nausea.

26.     At all relevant times, Mr. Brooks' Type IV hiatal hernia was an impairment which substantially limited one or more major life activities, including, but not limited to, walking, standing, lifting, bending, eating, digesting, and engaging in strenuous physical activity. A Type IV hiatal hernia further substantially limited one or more of Mr. Brooks' major bodily functions, including but not limited to his body's digestive function. Accordingly, Mr. Brooks was disabled under both federal law and Connecticut state law.

27.     Mr. Brooks' Type IV hiatal hernia further constituted a serious health condition requiring continuing care, and which entitled Mr. Brooks to protected leave for FMLA purposes.

28.     Mr. Brooks' doctor recommended surgical treatment of this disability as soon as possible in order to prevent further potential irreparable harm to his (Mr. Brooks') health.

29.     Mr. Brooks contacted Mr. Morzello and disclosed his Type IV hiatal hernia disability to the Defendants.

30.     At all relevant times, the Defendants (both individually and collectively) were engaged in an industry affecting commerce and employed 50 or more employees within 75 miles of where Mr. Brooks worked.

31.     Furthermore, at all relevant times, Mr. Brooks had been an employee for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period. As such, Mr. Brooks was an eligible employee for leave protected under the FMLA.  Likewise, Mr. Brooks was entitled to FMLA leave.

32.     Mr. Brooks then requested the reasonable accommodation of being allowed to take protected FMLA/disability leave for approximately five weeks starting on or around August 8, 2018, in order to receive treatment, including invasive surgery related to his newly diagnosed disability.

33.     The Defendants approved this reasonable accommodation of disability leave protected under the FMLA.

34.     Indeed, the Defendants were aware of Mr. Brooks medical condition and hernia-related disability both before, and certainly starting at the time that, he formally requested FMLA leave.

35.     The Defendants made clear that Mr. Brooks should continue to communicate with Mr. Morzello directly concerning disability-related matters.

36.     Accordingly, Mr. Brooks utilized FMLA leave for his disability starting on August 8, 2018.

37.     On or around August 9, 2018, Mr. Brooks underwent invasive surgical treatment for his disability.

38.     Importantly, Mr. Brooks submitted the appropriate medical paperwork to the Defendants and was approved for FMLA leave for his disability.

39.     During Mr. Brooks' FMLA leave, he kept in regular contact with Mr. Morzello in order to provide updates on his medical treatment and convey his enthusiasm to return to work.

40.     During his recovery process, Mr. Brooks' doctor informed him he would be able to return to work but should request from his employer a lifting restriction in order to avoid aggravating his existing disability.

41.     Prior to his return, Mr. Brooks requested the reasonable accommodation from the Defendants of a restriction on the lifting of heavy objects weighing more than 30 pounds. As only a small, irregular, and minor portion of Mr. Brooks' job duties involved tasks lifting more than 30 pounds, this was not an undue burden on Defendants. Indeed, the lifting of objects over 30 pounds was not an essential function of Mr. Brooks' job duties.  The lifting restriction requested by Mr. Brooks included the reasonable accommodation of not being required to attempt to lift the water washing beam (which weighed far more than 30 pounds), a task that typically involved multiple able-bodied individuals to lift a very heavy industrial appliance.

42.     Defendants approved these requested reasonable accommodations related to Mr. Brooks' disability.

43.     On or around September 5, 2018, Mr. Brooks returned to his employment from his FMLA/disability leave.

44.     Upon his return, Mr. Brooks reiterated his reasonable accommodation requests of a restriction on lifting more that 30 pounds, as well as not being required to assist in lifting the water washing beam.

45.     Mr. Morzello confirmed that these accommodations were being granted and made clear that they didn't pose an undue burden on the Company.

46.     Mr. Brooks, in the alternative, additionally further requested the reasonable accommodation of being allowed to transfer to a scale house operator position, a role which he believed would involve less lifting.

47.     Mr. Brooks was qualified for the scale house operator position and indeed had previously satisfactorily performed the position during his tenure with the Company.

48.     Upon information and belief, a scale house operator position was open and available during Mr. Brooks employment at the Company, and thus the Company could have permanently transferred him into this position.

49.     This accommodation request was denied, and the Defendants made no effort to engage in any interactive dialogue regarding Mr. Brooks' transfer request, despite the fact that it had been requested as a reasonable accommodation related to his disability.

50.     With his lifting accommodation in effect, Mr. Brooks continued to experience some pain, but was able to successfully perform all essential functions of his job.

51.     In or around early December 2018, Mr. Morzello informed Mr. Brooks that the Company was revoking his previously granted accommodation of not being required to lift the heavy water washing beam. In effect, Mr. Brooks was told he would have to participate in the lifting of the heavy appliance, despite his requested reasonable accommodation for his disclosed disability.

52.     Mr. Brooks raised protected concerns to Mr. Morzello that this was an improper revocation of a previously granted reasonable accommodation request for his disability. Indeed, there were plenty of available employees who could have assisted in lifting the beam and providing this accommodation to Mr. Brooks did not impose an undue hardship on the Company. Mr. Brooks further raised protected concerns over the Defendants' prior rejection of his request to transfer departments into a role he was otherwise qualified for and that involved less lifting.

53.     Mr. Morzello appeared to become annoyed with Mr. Brooks and threatened Mr. Brooks that if he did not lift the water washing beam as he was instructed to do, he would be terminated. Mr. Morzello made clear that he was unwilling to engage in an interactive dialogue with Mr. Brooks concerning his reasonable accommodation request(s).

54.     Indeed, Mr. Morzello made clear that the Defendants were no longer willing to allow Mr. Brooks to not lift items weighing more than 30 pounds.

55.     Alarmed by this discriminatory and/or retaliatory threat against his employment, Mr. Brooks acquiesced to Mr. Morzello's orders.

56.     Mr. Brooks accordingly begun to participate in heavy lifting duties at the Company, despite his medical instruction to refrain from doing so for his disability.  These duties caused Mr. Brooks significant pain, and he feared they increased his risk of injury, but he performed them nonetheless because the Company had made clear that he would be fired if he did not.

57.     In or around February 2019, after over a month of successfully performing the lifting tasks asked of him, but at great pain,, Mr. Brooks once again requested the reasonable accommodations of either being allowed to stop lifting weights over 30 pounds (via manner of assistance from a coworker) or of being allowed to transfer to a different position open position for which he was qualified.

58.     Mr. Brooks made it clear to the Defendants that the pain from lifting the water washing beam in particular was causing a lot of stress on his hernia and ran the risk of exacerbating his disability.

59.     As this was not an essential function of Mr. Brooks' job and/or because there were multiple other employees who the Company had available to lift the washing beam, this was not an undue burden on the Defendants.

60.     The Defendants rejected his reasonable accommodation requests and refused to engage in an interactive dialogue regarding his disability-related accommodation requests.

61.     Mr. Brooks' disability-related symptoms, including severe abdominal pain and chest pain, began gradually flaring up more frequently the more he was forced to participate in lifting the water washing beam and other heavy objects.

62.     Due to Mr. Morzello's discriminatory and/or retaliatory words and actions, Mr. Brooks eventually approached his shift supervisor, Chris Ford ("Mr. Ford"), and requested the reasonable accommodations of either being allowed to refrain from lifting the water washing beam or of being allowed to transfer into a different open position for which he was qualified.

63.     Upon information and belief, there were at that time open positions for which Mr. Brooks was qualified and could have transferred into.

64.     Mr. Ford indicated to Mr. Brooks that he would look into the requests.  However, upon information and belief, Mr. Ford made no efforts to engage in an interactive dialogue regarding Mr. Brooks' accommodation requests and no follow-up action was taken.  Indeed, by failing to grant Mr. Brooks requests, Mr. Ford and the Company again denied Mr. Brooks' accommodation requests.

65.     On or around September 18, 2019, Mr. Brooks was lifting the water washing beam when he experienced an agonizing pain in his abdomen, around the area where he had previously received surgical treatment for his disability. Mr. Brooks was in so much pain that he doubled over and could not stand straight.

66.     Mr. Brooks disclosed the workplace injury to Mr. Ford and requested the reasonable accommodation of leaving work early to seek medical attention for his potentially re-aggravated disability.

67.     Mr. Ford granted this accommodation request.

68.     At the doctor's office, Mr. Brooks was subsequently diagnosed with having developed two additional Type IV hiatal hernias, which required immediate surgical treatment to prevent irreparable harm to Mr. Brooks' health.

69.     These additional Type IV hiatal hernias were likely developed due to excessive strain caused by being required to lift heavy weights at work (such as being required to lift the water washing beam) against medical advice.

70.     At all relevant times, Mr. Brooks' newly formed Type IV hiatal hernias, both individually and collectively with his pre-existing Type IV hiatal hernia, were an impairment which substantially limited one or more major life activities, including, but not limited to, walking, standing, lifting, bending, eating, digesting, and engaging in strenuous physical activity. These additional Type IV hiatal hernias further substantially limited one or more of Mr. Brooks' major bodily functions, including but not limited to, his body's digestive functions. Accordingly, Mr. Brooks was further disabled under both federal law and Connecticut state law.

71.     Mr. Brooks contacted Mr. Morzello and disclosed his diagnosis of two additional Type IV hiatal hernia disabilities.

72.     Mr. Brooks raised protected concerns to Mr. Morzello that his hernia disability(ies) had been aggravated due to the Defendants' revocation of his previous disability-related accommodations and Defendants' insistence that he engage in lifting behavior detrimental to his disability.

73.     Mr. Brooks then requested the reasonable accommodation of FMLA/disability leave in order to receive surgical treatment for his aggravated disability.

74.     Mr. Morzello approved this reasonable accommodation request.

75.     Mr. Brooks thus went out on eligible protected FMLA/disability leave as of September 18, 2019.

76.     Mr. Brooks underwent surgically invasive treatment for his hernia disability(ies) on or around September 20, 2019.

77.     Following his surgery, Mr. Brooks' doctor recommended he remain out on disability/FMLA leave for approximately ten weeks in order to properly recuperate from his disability-related surgery.

78.     Importantly, Mr. Brooks had enough protected time available under the FMLA to cover a full ten (10) week leave related to this surgery.  In other words, Mr. Brooks would have still been within his 12 weeks of available annual FMLA at the end of this ten (10) week leave.

79.     Mr. Brooks contacted Mr. Morzello and informed him of the doctor's medical advice to undergo surgery related to his hernia disability(ies) and thus requested the reasonable accommodation of utilizing disability leave (which would also be FMLA-eligible protected leave) for approximately ten weeks.

80.     Mr. Morzello granted this disability accommodation request (which would have been FMLA-protected leave).

81.     Indeed, the Company knew about Mr. Brooks' request for leave related to surgery for a hernia disability and approved a FMLA-eligible protected leave for Mr. Brooks related to this surgery and recovery.

82.     During Mr. Brooks' FMLA-eligible protected disability leave, he kept in contact with the Defendants to provide periodic updates as to his health and his enthusiasm to eventually return to work.

83.     Mr. Brooks' doctor medically cleared him to return to work effective November 25, 2019, but also recommended that Mr. Brooks be subject to a restriction on lifting objects over 20 pounds so as to avoid any reaggravation of his disability.

84.     Notably, a return date of November 25, 2019, was only nine and a half weeks after Mr. Brooks started FMLA leave on September 18, 2019, and thus Mr. Brooks had not yet exhausted his protected FMLA leave entitlement and would not have exhausted such entitlement as of November 25, 2019.

85.     On or around November 20, 2019, Mr. Brooks reached out to the Defendants and spoke with the plant manager (and Mr. Morzello's supervisor), Phil Schwer ("Mr. Schwer"), to inform him of his medical clearance to return to work from his protected FMLA leave.

86.     Mr. Brooks talked to Mr. Schwer about his hernia disability and requested the disability-related reasonable accommodation from Mr. Schwer of a restriction on lifting more than 20 pounds, per his doctor's medical advice for his disability.

87.     Mr. Schwer appeared to be frustrated by Mr. Brooks' request for such a lifting restriction and immediately told Mr. Brooks the Company would not provide his requested accommodation.   Indeed, Mr. Schwer made clear that the Company would not provide any lifting restriction, even if it was for a different weight limit.

88.     Mr. Brooks pointed out that he could still perform the essential functions of his job even with the requested lifting restriction and raised concerns at the Company's seeming unwillingness to provide such a restriction. Mr. Brooks also raised protected concerns that the Company had a history of improperly denying his requested disability-related accommodations, and pointed out that the Company had previously improperly revoked (or otherwise failed to

provide) his requested accommodations for his disability, which had in turn caused his disability symptoms to worsen.

89.     Mr. Brooks raised protected concerns, accordingly, that if the Defendants failed to accommodate his disabilities or engage in an interactive dialogue regarding accommodations for his disabilities, Defendants were actively interfering with his right to be restored to his job position (which he would have been able to perform).

90.     Mr. Brooks also requested the reasonable accommodation of a transfer to a qualified position which involved less heavy lifting, as there were a number of positions available within the Company at that time that required less lifting and for which Mr. Brooks was qualified.

91.     Mr. Schwer nevertheless refused to engage in an interactive dialogue concerning Mr. Brooks' reasonable accommodation requests and made clear that he was denying all of these requests.

92.     Indeed, Mr. Schwer appeared annoyed at Mr. Brooks' accommodation requests and expressions or protected concerns.

93.     Mr. Schwer then informed Mr. Brooks that the Company was not going to allow him (Mr. Brooks) to return and he announced that he was terminating the employment of Mr. Brooks.

94.     Accordingly, Mr. Brooks was involuntarily terminated from his employment on November 20, 2019.

95.     Notably, Mr. Brooks was still in the midst of an eligible and protected FMLA leave for his disability when he was involuntarily terminated.

96.     Notably, Mr. Brooks had requested to return to work on November 25, 2019 and was arranging to be restored to his job from an eligible and protected FMLA leave for his disability when he was involuntarily terminated.

97.     Upon information and belief, Mr. Brooks was replaced in his position by a non-disabled employee.

98.     On or around April 30, 2020, Mr. Brooks timely filed a Charge of Discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

99.     On or around October 13, 2020, Mr. Brooks informed the CHRO of his intent to remove his charge in order to pursue his claims in court and accordingly requested that the CHRO release jurisdiction.

100.    On or around November 4, 2020, the CHRO issued Mr. Brooks a release of jurisdiction to allow him to pursue his claims in court.

101.    On or around November 4, 2020, the EEOC provided Mr. Brooks with a Notice of a Right to Sue letter.

102.    This Complaint is timely filed in compliance with the timeframes of relevant laws and requirements.


**COUNT I**

**(Disability Discrimination in Violation of Conn. Gen. Stat. § 46(a)-60)**

**Mr. Brooks v. Defendants**

103.    Mr. Brooks incorporates all paragraphs above and below as if set forth fully herein.

104.    Mr. Brooks suffers (and all relevant times suffered) from one or more disabilities, namely from one or more Type IV hiatal hernias.  Symptoms of this condition that Mr. Brooks experiences includes severe abdominal pain, regurgitation, dysphagia, and chest pain.

105.    This condition substantially limits one or more major life activities, including but not limited to, walking, standing, lifting, bending, eating, digesting, and engaging in strenuous physical activity. A Type IV hiatal hernia further substantially limited one or more major bodily functions, such as the digestive system. Accordingly, Mr. Brooks is (and at all relevant times was) disabled under Conn. Gen. Stat. § 46(a)-81.

106.    At all relevant times, Mr. Brooks was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

107.    Mr. Brooks disclosed his disability to Defendants, the Defendants knew about Mr. Brooks' disability(ies), and/or Defendant regarded Mr. Brooks as disabled.

108.    Mr. Brooks requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job.  These requested reasonable accommodations included, but were not limited to: (i) one or more lifting restrictions for heavy objects over a certain weight; (ii) non-participation in the lifting of a heavy water washing beam; (iii) transferring to one or more open positions within the Company which involved less lifting and which Mr. Brooks was otherwise qualified for; and (iv) one or more disability-related medical leaves.

109.    Defendants improperly denied (or revoked) one or more of Mr. Brooks' requested disability-related accommodations.

110.    Defendant failed to engage in an interactive dialogue related to some or all of Mr. Brooks' reasonable accommodation requests.

111.    Mr. Brooks' requested disability-related accommodations did not pose an undue burden on Defendants.

112.    Mr. Brooks would have remained capable of performing the essential functions of his position even if some or all of his requested accommodations had been granted.

113.    The reasonable accommodations that Mr. Brooks requested, and which Defendants improperly denied, would have assisted Mr. Brooks in performing the essential functions of his job and/or would have allowed him to perform the essential functions of his job without experiencing significant pain or discomfort.

114.    Defendants discriminated against Mr. Brooks due to his disability(ies) by subjecting Mr. Brooks to adverse actions, including, but not limited to, a harassing and retaliatory environment, the revocation of disability-related accommodations, disregard for Mr. Brooks' disability-related pain, and the termination of Mr. Brooks' employment.

115.    Upon information and belief, the Company replaced Mr. Brooks with a lesser or similarly qualified, non-disabled employee.

116.    Defendants' actions were outrageous, because of Defendants' reckless indifference to the rights of Mr. Brooks or an intentional and wanton violation of those rights.

117.    As a direct and proximate result of Defendants' violation of Conn. Gen. Stat. § 46(a)-81, Mr. Brooks has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

118.     Mr. Brooks seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.


**COUNT II**

**(Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq.*)**

**Mr. Brooks v. Defendants**

119.     Mr. Brooks incorporates all paragraphs above and below as if set forth fully herein.

120.     Mr. Brooks suffers (and all relevant times suffered) from one or more disabilities, namely one or more Type IV hiatal hernias.  Symptoms of this condition that Mr. Brooks experiences includes severe abdominal pain, regurgitation, dysphagia, and chest pain.

121.     This condition substantially limits one or more major life activities, including but not limited to, walking, standing, lifting, bending, eating, digesting, and engaging in strenuous physical activity. A Type IV hiatal hernia further substantially limited one or more major bodily functions, such as the digestive system. Accordingly, Mr. Brooks is (and at all relevant times was) disabled under the ADA.

122.     At all relevant times, Mr. Brooks was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

123.    Mr. Brooks disclosed his disability to Defendants, the Defendants knew about Mr. Brooks' disability(ies), and/or Defendant regarded Mr. Brooks as disabled.

124.    Mr. Brooks requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job.  These requested reasonable accommodations included, but were not limited to: (i) a lifting restriction for heavy objects over a certain weight; (ii) non-participation in the lifting of a heavy water washing beam; (iii) transferring to a position within the Company with less lifting requirements that Mr. Brooks was otherwise qualified for; and (iv) disability-related medical leave.

125.    Defendants failed to engage in an interactive dialogue related to some or all of Mr. Brooks' reasonable accommodation requests.

126.    Mr. Brooks' requested disability-related accommodations did not pose an undue burden on Defendants.

127.    Defendants failed to provide Mr. Brooks with one or more reasonable accommodations that he requested and/or that would have assisted him in performing the essential functions of his job and/or would have allowed him to perform the essential functions of his job without experiencing significant pain or discomfort.

128.    Defendants discriminated against Mr. Brooks due to his disability by subjecting Mr. Brooks to adverse actions, including, but not limited to, a harassing and retaliatory environment, the revocation of disability-related accommodations, disregard for Mr. Brooks' disability-related pain, and the termination of Mr. Brooks' employment.

129.    Upon information and belief, the Company replaced Mr. Brooks with a lesser or similarly qualified, non-disabled employee.

130.    Defendants' actions were outrageous, because of Defendants' reckless indifference to the rights of Mr. Brooks or an intentional and wanton violation of those rights.

131.    As a direct and proximate result of Defendants' violation of the ADA, Mr. Brooks has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

132.    Mr. Brooks seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.


**COUNT III**

**(Failure to Accommodate a Disability and/or Engage in Interactive Process for Accommodations in Violation of Conn. Gen. Stat. § 46(a)-60)**

**Mr. Brooks v. Defendants**

133.    Mr. Brooks incorporates all paragraphs above and below as if set forth fully herein.

134.    Mr. Brooks suffers (and all relevant times suffered) from one or more disabilities, namely one or more Type IV hiatal hernias.  Symptoms of this condition that Mr. Brooks experiences includes severe abdominal pain, regurgitation, dysphagia, and chest pain.

135.    This condition substantially limits one or more major life activities, including but not limited to, walking, standing, lifting, bending, eating, digesting, and engaging in strenuous

physical activity. A Type IV hiatal hernia further substantially limited one or more major bodily functions, such as the digestive system. Accordingly, Mr. Brooks is (and at all relevant times was) disabled under Conn. Gen. Stat. § 46(a)-81.

136.    At all relevant times, Mr. Brooks was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

137.    Mr. Brooks disclosed his disability to Defendants, the Defendants knew about Mr. Brooks' disability(ies), and/or Defendant regarded Mr. Brooks as disabled.

138.    Mr. Brooks requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job.  These requested reasonable accommodations included, but were not limited to: (i) a lifting restriction for heavy objects over a certain weight; (ii) non-participation in the lifting of a heavy water washing beam; (iii) transferring to a position within the Company with less lifting requirements that Mr. Brooks was otherwise qualified for; and (iv) disability-related medical leave.

139.    Defendants failed to engage in an interactive dialogue related to some or all of Mr. Brooks' reasonable accommodation requests.

140.    Mr. Brooks' requested disability-related accommodations did not pose an undue burden on Defendants.

141.    Defendant failed to provide Mr. Brooks with one or more reasonable accommodations that he requested and/or that would have assisted him in performing the essential functions of his job and/or would have allowed him to perform the essential functions of his job without experiencing significant pain or discomfort.

142.    Defendants failed to accommodate and/or engage in an interactive process with Mr. Brooks by subjecting Mr. Brooks to adverse actions, including, but not limited to, a harassing and retaliatory environment, the revocation of disability-related accommodations, and dismissal of attempts to engage in an interactive process with Defendants.

143.    Upon information and belief, the Company replaced Mr. Brooks with a lesser or similarly qualified, non-disabled employee.

144.    Defendants' actions were outrageous, because of Defendants' reckless indifference to the rights of Mr. Brooks or an intentional and wanton violation of those rights.

145.    As a direct and proximate result of Defendants' violation of Conn. Gen. Stat. § 46(a)-81, Mr. Brooks has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

146.    Mr. Brooks seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.


**COUNT IV**

**(Failure to Accommodate a Disability and/or Engage in Interactive Process for Accommodations in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq.*)**

**Mr. Brooks v. Defendants**

147.    Mr. Brooks incorporates all paragraphs above and below as if set forth fully herein.

148.    Mr. Brooks suffers (and all relevant times suffered) from a disability, Type IV hiatal hernias.  Symptoms of this condition that Mr. Brooks experiences includes severe abdominal pain, regurgitation, dysphagia, and chest pain.

149.    This condition substantially limits one or more major life activities, including but not limited to, walking, standing, lifting, bending, eating, digesting, and engaging in strenuous physical activity. A Type IV hiatal hernia further substantially limited one or more major bodily functions, such as the digestive system. Accordingly, Mr. Brooks is (and at all relevant times was) disabled under the ADA.

150.    At all relevant times, Mr. Brooks was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

151.    Mr. Brooks disclosed his disability to Defendants, the Defendants knew about Mr. Brooks' disability(ies), and/or Defendant regarded Mr. Brooks as disabled.

152.    Mr. Brooks requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job.  These requested reasonable accommodations included, but were not limited to: (i) a lifting restriction for heavy objects over a certain weight; (ii) non-participation in the lifting of a heavy water washing beam; (iii) transferring to a position within the Company with less lifting requirements that Mr. Brooks was otherwise qualified for; and (iv) disability-related medical leave.

153.    Defendants failed to engage in an interactive dialogue related to some or all of Mr. Brooks' reasonable accommodation requests.

154.    Mr. Brooks' requested disability-related accommodations did not pose an undue burden on Defendants.

155.    Defendant failed to provide Mr. Brooks with one or more reasonable accommodations that he requested and/or that would have assisted him in performing the essential functions of his job and/or would have allowed him to perform the essential functions of his job without experiencing significant pain or discomfort.

156.    Defendants failed to accommodate and/or engage in an interactive process with Mr. Brooks by subjecting Mr. Brooks to adverse actions, including, but not limited to, a harassing and retaliatory environment, the revocation of disability-related accommodations, and dismissal of attempts to engage in an interactive process with Defendants.

157.    Upon information and belief, the Company replaced Mr. Brooks with a lesser or similarly qualified, non-disabled employee.

158.    Defendants' actions were outrageous, because of Defendants' reckless indifference to the rights of Mr. Brooks or an intentional and wanton violation of those rights.

159.    As a direct and proximate result of Defendants' violation of the ADA, Mr. Brooks has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

160.    Mr. Brooks seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish,

loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs

## COUNT V

### (Retaliation in Violation of Conn. Gen. Stat. § 46a-60)

### Mr. Brooks v. Defendants

161.    Mr. Brooks incorporates all paragraphs above and below as if set forth fully herein.

162.    Mr. Brooks engaged in protected activity under Conn. Gen. Stat. § 46a-60, including, but not limited to, by (i) requesting and/or utilizing reasonable accommodations for his disability, (i) by expressing protected concerns that he was being improperly denied requested reasonable accommodations, (iii) by expressing protected concerns that the Company was failing to engage in an adequate interactive dialogue related to his disability-related accommodation requests, and/or by (iv) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Brooks' disability.

163.    The disability-related accommodation requests which Defendant retaliated against Mr. Brooks for requesting included, but were not limited to, (i) a lifting restriction for heavy objects over a certain weight; (ii) non-participation in the lifting of a heavy water washing beam; (iii) transferring to a position within the Company with less lifting requirements that Mr. Brooks was otherwise qualified for; and (iv) disability-related medical leave.

164.    Defendants' actions were outrageous, because of Defendants' reckless indifference to the rights of Mr. Brooks or an intentional and wanton violation of those rights.

165.     As a direct and proximate result of the Defendant's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

166.     Mr. Brooks seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

## COUNT VI

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq.*)**

**Mr. Brooks v. Defendant**

167.     Mr. Brooks incorporates all paragraphs above and below as if set forth fully herein.

168.     Mr. Brooks engaged in protected activity under the ADA, including, but not limited to by (i) requesting and/or utilizing reasonable accommodations for his disability, (ii) by expressing protected concerns that he was being improperly denied requested reasonable accommodations, (iii) by expressing protected concerns that the Company was failing to engage in an adequate interactive dialogue related to his disability-related accommodation requests, and/or by (iv) opposing, voicing protected concerns, and/or engaging in other protected activity

related to the harassing and discriminatory actions taken by the Company due to Mr. Brooks'
disability.

169.    The disability-related accommodation requests which Defendant retaliated against
Mr. Brooks for requesting included, but were not limited to, (i) a lifting restriction for heavy
objects over a certain weight; (ii) non-participation in the lifting of a heavy water washing beam;
(iii) transferring to a position within the Company with less lifting requirements that Mr. Brooks
was otherwise qualified for; and (iv) disability-related medical leave.

170.    The Defendants unlawfully coerced, intimidated, threatened, and/or interfered
with Mr. Brooks' exercising of, or enjoyment of, one or more rights granted by the ADA.

171.    The Defendants willfully violated the ADA because the Defendants knew or
should have known its conduct was prohibited by Federal law and/or the Defendants acted with
malice and/or reckless indifference to the federally protected rights of Mr. Brooks.

172.    As a direct and proximate result of the Defendants' violation of the ADA, Mr.
Brooks has suffered and continues to suffer damages, including, but not limited to, lost
compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering,
loss of enjoyment of life, and emotional damages.

173.    Mr. Brooks seeks all damages to which he is entitled, including, but not limited to
lost compensation and benefits (including, but not limited to, back pay and front pay), other
monetary damages, diminished earning capacity, compensatory damages (including, but not
limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish,
loss of enjoyment of life, and other nonpecuniary losses), punitive damages, interest, attorney's
fees, and costs.

**COUNT VII**

**(Interference with Rights Under the Family and Medical Leave Act – 29 U.S.C. § 2615)**

**Mr. Brooks v. Defendants**

174.    Mr. Brooks incorporates all paragraphs above and below as if set forth fully herein.

175.    The Defendants are (and at all relevant times were) engaged in an industry affecting commerce.

176.    The Defendants (including each of Wheelabrator Bridgeport, Wheelabrator Technologies, and Wheelabrator CT collectively) constituted a single integrated employer and/or joint employer for the purposes of the FMLA.

177.    The Defendants (both collectively and each individually) employed 50 or more employees during 20 or more calendar weeks in each current and/or preceding calendar year.

178.    Accordingly, the Defendants were (both collectively and each individually) a covered employer under the FMLA.

179.    Mr. Brooks was an eligible employee under the FMLA because at all relevant times he had worked for the Defendants for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

180.    In addition, the Defendants employed 50 or more employees within 75 miles of the location at which Mr. Brooks was based.

181.    Mr. Brooks suffered from one or more serious health conditions which required inpatient care at a hospital or continuing treatment by a healthcare provider, including one or more Type IV hiatal hernias.

182.    Mr. Brooks requested FMLA-eligible disability leave including in the form of one or more short-term disability leaves for his Type IV hiatal hernias, related to the need to take

time off for his serious health conditions and/or to undergo treatment for his serious health

conditions (including recovery time related to such treatment/surgery).

183.    The Defendants interfered with, restrained, and/or denied the exercise of, or the

attempted exercise of, Mr. Brooks' rights under the FMLA.

184.    For example, the Defendants, including through their agents, terminated Mr.

Brooks while he was actively out on an eligible and protected FMLA leave and thereby denied

him the right to continue to the end of this leave.

185.    Further, the Defendants interfered with Mr. Brooks' protected right to job

restoration following an FMLA leave by terminating him before he could fully exercise such a

right. Indeed, Defendants terminated Mr. Brooks exactly because he was attempting to exercise

the right of job restoration and essentially terminated him specifically so that he would be

deprived of his right to job restoration.

186.    In terminating Mr. Brooks, the Defendants unlawfully interfered with Mr.

Brooks' protected right to FMLA leave and subsequent right to job restoration.

187.    The Defendants' actions were willful and in bad faith.

188.    As a direct and proximate result of the Defendants' violation of the FMLA, Mr.

Brooks has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life,

and emotional damages.

189.    Mr. Brooks seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

## COUNT VIII

### (Retaliation for Exercising Rights under the Family Medical Leave Act – 29 U.S.C. §2615)

### Mr. Brooks v. Defendants

190.    Mr. Brooks incorporates all paragraphs above and below as if set forth fully herein.

191.    Mr. Brooks exercised his rights under the FMLA, including by requesting protected leaves under the FMLA and/or utilizing leaves eligible for protection under the FMLA.

192.    The Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Brooks for requesting, for seeking to exercise, and for utilizing FMLA leave and the FMLA right to job restoration, including by subjecting Mr. Brooks to adverse actions, including, but not limited to, the termination of the Plaintiff's employment.

193.    Mr. Brooks raised protected concerns to the Defendants about their improper failure to restore him to his position, as well as that their lack of accommodations for his disabilities and/or failure to engage in an interactive dialogue regarding reasonable accommodations for his disabilities amounted to interference with his FMLA-protected right to be restored to his job position (which he would have been able to perform).

194.    The Defendants' actions were willful and undertaken in bad faith.

195.    As a direct and proximate result of the Defendants' violation of the FMLA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

196.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

WHEREFORE, the Plaintiff, Johnny Brooks, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for emotional distress and other mental and emotional pain and suffering;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff punitive damages;

H.  Award the Plaintiff liquidated damages;

I.   Award the Plaintiff his reasonable attorney's fees;

J.   Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which he is entitled; and

L.   Grant such further relief as is just and equitable.

Respectfully Submitted,

Johnny Brooks

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date: November 16, 2020          By:   __/s/ Benjamin J. Wyatt_____

Benjamin J. Wyatt, ct29994
BWyatt@Wyattlegalservices.com

Michael Varraso, ct30777
MVarraso@wyattlegalservices.com

The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868