UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHNNY BROOKS,                          :
                                        :
        Plaintiff,                      :
                                        :
        v.                              :    CASE NO. 3:20CV1716(OAW)
                                        :
WHEELABRATOR BRIDGEPORT, LP,            :
WHEELABRATOR TECHNOLOGIES, INC.         :
                                        :
        Defendants.                     :


## ORDER ON PLAINTIFFS MOTION TO COMPEL

Following a ruling from this Court, disposing of a number of discovery disputes, the parties attempted to complete two Rule 30(b)(6) depositions.  While the Court had high hopes that the parties would be able to complete this final step in the discovery process without further judicial intervention, apparently that was not to be.  Currently pending before the Court is plaintiff's motion to compel further Rule 30(b)(6) testimony from Wheelabrator Technologies ("WT"), Wheelabrator Bridgeport ("WB"), and Wheelabrator Environmental Systems, Inc. ("WES").  (Dkt. #115.)  Oral argument on the motion was held before the undersigned on August 18, 2023.

For the reasons discussed at oral argument and that follow, plaintiff's motion to compel Rule 30(b)(6) deposition testimony is GRANTED in part and DENIED in part.

Rule 26(b)(1) of the Federal Rules of Civil Procedure

provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Discovery under the Federal Rules of Civil Procedure is a conditional and carefully circumscribed process." Bagley v. Yale Univ., 315 F.R.D. 131, 144 (D. Conn. 2016), as amended (June 15, 2016).

"All '[m]otions relative to discovery,' including motions to compel, 'are addressed to the discretion of the [district] court.'" Id. (quoting Soobzokov v. CBS, Quadrangle/New York Times Book Co., 642 F.2d 28, 30 (2d Cir. 1981)). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998). Discovery orders "will only be reversed if [the district court's] decision constitutes an abuse of discretion." Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991).

"Like other forms of discovery, a Rule 30(b)(6) Notice is subject to limitations under Rule 26 of the Federal Rules of Civil Procedure. As a general proposition, whether something is

2

discoverable under Rule 26 of the Federal Rules of Civil Procedure is determined under a broader standard than that used to determine admissibility at trial." Dongguk Univ. v. Yale Univ., 3:08-CV-441 (TLM)(HBF), 270 F.R.D. 70, 72 (D. Conn. 2010). "But there are limits to discovery and the ways in which parties may use particular discovery tools. In particular, 'Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.'" Id. at 72 (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)); see also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)(Rule 26(c) gives a trial court broad discretion to decide when a protective order is appropriate and what degree of protection is required.) "A portion of a party's 30(b)(6) notice may also be stricken if it is overbroad." Dongguk Univ., 270 F.R.D. at 74; see also Krasney v. Nationwide Mut. Ins. Co., No. 3:06 CV 1164 JBA, 2007 WL 4365677, at *3 (D. Conn. Dec. 11, 2007)("federal judges have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) Notices.")

In this case, plaintiff has filed a motion outlining three issues.  First, plaintiff contends that the Rule 30(b)(6) witness designated for testimony related to WT was not properly prepared.  Second, plaintiff argues that the Rule 30(b)(6) witness designated to testify regarding WB was improperly

instructed not to answer certain questions.  Finally, plaintiff asserts that having just learned of WES, he should be permitted to conduct a Rule 30(b)(6) deposition related to WES and five proposed topics noticed to defendant in May of 2023.  Nearly all of the discussion at oral argument centered around the Rule 30(b)(6) deposition for WT and plaintiff's alleged need to depose someone from WES.  Both parties indicated that those issues could likely be addressed together.  As such, the Court will address the WT and WES issues first and conclude with the concerns regarding the WB deposition.

## I.   Rule 30(b)(6) Testimony of Wheelabrator Technologies ("WT")

Plaintiff's counsel makes a litany of arguments in the motion to compel and during oral argument in support of the argument that the Rule 30(b)(6) deposition of Ms. Velazquez was insufficient.  First, plaintiff contends that Ms. Velazquez was not properly prepared on the topics set forth in the Rule 30(b)(6) deposition notice.[1]  Consequently, plaintiff argues that

---

[1] The Court notes that the topics set forth in the deposition notice that plaintiff's counsel prepared did not accurately reflect or memorialize the agreements that the parties had reached.  The topics in the original notice of deposition were quite broad and the parties agreed to narrow down most of the topics. Plaintiff asserts that the defendant should have shown the deponent the original notice of deposition, which contained the broad and outdated topics.  However, since the original topics had been narrowed by agreement, it would have been pointless and confusing to prepare the deponent using the outdated notice. The Court notes that in the future it would clearly benefit counsel, the deponent, and the Court if the final Rule 30(b)(6) Notice actually contains the agreed upon topics.

the deponent was unable to answer questions within the scope of
the topics. Additionally, plaintiff argues that the deponent was
improperly instructed not to answer certain questions that,
according to plaintiff's counsel, fell within the scope of the
agreed upon deposition topics.  However, the broad topics in the
original notice that the deponent did not answer were topics
that had been narrowed down by agreement.  In other words, even
though the parties spent several months narrowing down the
topics that were listed in the original Rule 30(b)(6) notice and
documenting their agreements in writing, on the day of the
deposition, plaintiff's counsel disregarded the agreements and
tried using the broad topics that were set forth in the original
notice.

　　　　In connection with Ms. Velazquez's deposition, plaintiff's
counsel suggests that he was surprised when WT asserted that WT
is a holding company with no documents for Ms. Velazquez to
review and no employees to interview.  During oral argument,
defendant reiterated that WT does not have responsive documents
and does not employ anyone.  Defendant asserted on the record
that it made that fact clear to plaintiff's counsel on numerous
occasions prior to the deposition.  Additionally, defendant
notes that while plaintiff seems unhappy with the lack of
documents reviewed by and the overall preparation of Ms.
Velazquez, plaintiff has not indicated which, if any, documents

Ms. Velazquez should have reviewed or how else she should have been prepared.

Putting those issues aside, the defendants have proposed a compromise to allow for a new Rule 30(b)(6) deponent to be deposed on behalf of WT and answer questions pertaining to the previously agreed upon "core" topics.  (Dkt. #122 at 9-12.) Defendants' proposal seems to be sufficient to establish WT's status as a holding company and WT's alleged involvement, or lack thereof, with any of the operations of WB.

As such, the motion to compel is GRANTED, insofar as the plaintiff will be able to depose an individual who will be prepared to discuss topics 13 and 14, as discussed during the oral argument and articulated in an email dated April 24, 2022 from Attorney Panigrahi to Attorney McKenna.  To be clear, as per the email, dated April 24, 2022, topics 13 and 14 allow plaintiff to ask questions to "clarify the management structure between [WB] and [WT], and if there are any shared executive officers between the two.  This will also deal with any manner in which WT and WB are connected by policy/procedures or employees (including any kind of corporate relationship)." (Dkt. 122-5 at 10.)  The Court adopts the reasonable solution that was

articulated by defense counsel in defendant's brief and during
oral argument. [2]

## II.  Rule 30(b)(6) Testimony of Wheelabrator Environmental Systems, Inc. ("WES")

As previously articulated, the parties indicated a
willingness for the WES issue to be incorporated into the issues
surrounding the WT deposition.  Plaintiff's motion to compel
seeks to obtain a Rule 30(b)(6) deposition of an individual from
WES, a corporate entity who until now has not been the subject
of any discovery.  Plaintiff alleges that WES has been confirmed
to be the actual employer of many pertinent individuals and
allegedly provides human resources services for WB.  (Dkt. #115
at 24.)  Following the WT and WB depositions that are the
subject of the pending discovery disputes, plaintiff issued a
subpoena and notice of deposition seeking to depose a Rule
30(b)(6) witness from WES with five topics set forth in the
notice.  (Dkt. #115 at 24-26.)  The notice, issued on May 22,
2023 scheduled the deposition for May 31, 2023.  Plaintiff
argues that, given the newly discovered connection between WES,

---

[2] During oral argument plaintiff's counsel expressed concern about defining
words or phrases such as "management structure" and "relationship" and stated
that it would be difficult to prepare for topics 13 and 14 without final
definitions of those terms.  The Court has been, and is, concerned about
plaintiff's counsels' apparent desire to continue this litigation and
discovery process on indefinitely, and this issue is a spot-on example.  The
Court is certain that capable lawyers, such as the lawyers involved in this
case, have a full understanding of what the terms "management" and
"relationship" mean.  If confusion remains, the Court politely directs the
lawyers to a dictionary.

WB, and WT, plaintiff would be at a disadvantage if he is unable to depose the Rule 30(b)(6) deponent.

Plaintiff highlights testimony from a number of witnesses who identified their employer as WT, which allegedly contradicts testimony from the Rule 30(b)(6) deponents for WT and WB who identified the employer as likely to be WES. (Dkt. #115 at 27-30.)  Plaintiff indicates that this new and contradictory revelation and the potential importance regarding WES requires clarification and justifies the additional Rule 30(B)(6) deposition.  Finally, plaintiff indicates that the deposition that was scheduled for May of 2023 was noticed at the earliest possible moment after the new information regarding WES was revealed.

Defendant responds by arguing that the plaintiff knew of WES much earlier than May of 2023.  Defendant asserts, and plaintiff acknowledged during oral argument, that Meghan Martineau stated that she was a WES employee during a May 25, 2022 deposition.  (Dkt. #122 at 26 and #122-12.)  Following that deposition, plaintiff did not make any attempt to discover any information about WES until a year later and on the eve of the close of discovery.  Defendant additionally argues that the topics submitted by plaintiff for the proposed WES deposition seek to reignite previous disputes regarding the proper scope of Rule 30(b)(6) topics that have long been contested in this case

and will elicit information that is duplicative and unnecessary. (Dkt. #122 at 28-29.)  Finally, defendant argues that while plaintiff has alleged that there is mass confusion regarding which entity some of the deponents work for, that issue boils down to the somewhat informal use of the tradename Wheelabrator Technologies and not the actual formal incorporated entity.

It is a difficult for plaintiff's counsel to argue that he was unaware of the entity known as WES and that he just recently discovered that WES might be important.  As acknowledged by both sides, Meghan Martineau testified that she was employed by WES during her fact deposition in May of 2022.  Plaintiff's counsel followed up by asking Ms. Martineau about WES and Ms. Martineau asserted that WES and WT are the same company.  Plaintiff's counsel never sought any form of discovery regarding WES.[3] During oral argument plaintiff's counsel asserted that plaintiff was planning to get to the bottom of the WES issue during the Rule 30(b)(6) depositions of WT and WB.  However, it is hard to understand how plaintiff's counsel intended to drill down on that issue as WES was not the subject of any of the negotiated topics in the Rule 30(b)(6) notice.

---

[3] In fact, a review of the docket indicates that during the year between the disclosure of WES by Ms. Martineau and the current motion to compel, plaintiff filed two distinct motions seeking an extension of discovery.  In all of the detailed arguments providing justification for the needed extensions, the plaintiff did not ever identify a desire to probe into how WES might be related to any of the other entities.  *See* Dkt. #72 and #103.

Additionally, the Court has considered the five deposition topics proposed by plaintiff for the WES deposition.  The topics appear overly broad in light of the state of discovery in this case.  At the very end of the oral argument the Court inquired as to whether the WES issue was likely to reveal yet unknown individuals who were involved in the HR functions related to plaintiff's situation.  Both parties appear to agree that all relevant fact witnesses have been deposed, regardless of whether such witnesses are employed by WT, WB, or WES.  Defense counsel, as an officer of the court, represented that there are no secret or unknown parties or witnesses that will come out of the woodwork during a future Rule 30(b)(6) deposition governed by the "topic 13/14" compromise.  Defense counsel represents that all fact witnesses relevant to this case have been deposed already.  Since all of the fact witnesses involved in this case, including those who recommended or played a role in plaintiff's termination, have already been deposed, there is no need to go further than the above referenced proposal regarding topics 13 and 14.

The Court has concluded, both from the briefs and the oral argument, that the WES issue can be resolved by including WES in topics 13 and 14 of the WT deposition discussed above.  Based on the representations of defense counsel during the oral argument, this will, generously, give the plaintiff the opportunity to

determine the corporate structure of WT, WB, and WES and to determine how these entities do or do not share management structure, corporate officers, or employees.[4]

**III. Rule 30(b)(6) Testimony of Wheelabrator Bridgeport ("WB")**

Plaintiff's motion to compel argues that plaintiff was unable to obtain proper testimony from the Rule 30(b)(6) deponent from Wheelabrator Bridgeport, Mr. Anthony Morzello.[5] (Dkt. #115-1 at 15-24.)  The Court disagrees.

Plaintiff argues four points with regard to Mr. Morzello's deposition.  First, that defense counsel prevented Mr. Morzello from testifying about which employees performed plaintiff's job duties after plaintiff's termination and which employees were hired to replace plaintiff.  Second, that defense counsel prevented Mr. Morzello from testifying regarding which essential

---

[4] The defendant expressed concerns during oral argument that plaintiff may utilize this deposition as an opportunity to further extend discovery upon finding some tiny detail to alter the theory of his case and thus bring another motion to compel based upon that newly adapted theory.  The Court will cross that bridge if and when it has to do so. However, the Court notes that in a prior ruling, the Court alluded to a troubling pattern where a party will seemingly agree to something and then move the goal posts at the last minute or deny the existence of the agreement.  This happened in connection with the instant motion, where, as the e-mails prove, the parties reached agreements to narrow the scope of the deposition topics, and then one party disavowed the agreements during the deposition, as the deposition transcript shows.  The Court will highlight this troubling pattern one final time.  This type of conduct wastes judicial resources and forces the clients to incur unnecessary expenses. In the absence of strong and compelling evidence, the Court will not be inclined to provide any further discovery in this matter.

[5] This issue was not discussed during the oral argument as the Court decided that the issue had been addressed sufficiently in the parties' briefs.

11

functions of plaintiff's role WB believed plaintiff could not perform when he returned from leave in 2018.  Third, that defense counsel prevented Mr. Morzello from testifying regarding the same issue in relation to plaintiff's return from the 2019 leave.  Finally, that defense counsel prevented Mr. Morzello from testifying regarding discussions about potentially transferring plaintiff to an open Assistance Plant Operator role.

In response, defendant has outlined the constant evolution of the specific topics from the WB deposition at issue in plaintiff's motion.  (Dkt. #122 at 14-25.)

Plaintiff's first argument regarding testimony about which employees performed plaintiff's job duties after his termination and which employees were hired to replace plaintiff were addressed by the defendant as an issue regarding Rule 30(b)(6) topics 8 and 17.  The "notes" appended to the deposition topics indicate that those topics deal with "hiring of individuals who performed Mr. Brooks' role or were hired to replace his role" (dkt. 117-1 at 214) and "who was hired or replaced Mr. Brooks' [position] . . . or which employees were hired in any [new position replacing Mr. Brook's position]." (Dkt. #117-1 at 216.)

Plaintiff's questions in this section of the motion center around four individuals identified on a list as being hired as utility operators, the role formerly held by Mr. Brooks. (Dkt.

12

#115-1 at 16.)  Plaintiff then sought clarification and information regarding the functions and lifting requirements for APO Andrew Simmons.  (Dkt. #115-1 at 17.)  In both instances identified by plaintiff, defense counsel instructed the deponent not to answer as she saw the questions as beyond the scope of the deposition topics.

Upon review of the deposition testimony the Court agrees with defendants' assessment.  Topics 8 and 17, as many topics in this case, became somewhat convoluted and unclear.  However, given the parties' notes narrowing the scope of the topics in the notice of deposition, it is clear that the topics were directed at determining who filled plaintiff's old role or any new role created to cover plaintiff's now vacant job duties.  As such, Mr. Morzello should have been prepared to indicate who was hired to fill any such role.  As noted by defendant, Mr. Morzello did just that.  When asked by plaintiff's counsel "who was hired to back-fill or otherwise replace Johnny Brooks?" Mr. Morzello responded that Mr. Andrew Simmons was hired into an APO position.  (Dkt. #122-10 at 7.)  Further inquiry went beyond the scope of topics 8 and 17.

Plaintiff next contends that questions regarding which essential functions of plaintiff's job WB believed plaintiff could not perform were improperly left unanswered.  The Court, again, disagrees.  The Rule 30(b)(6) topics at issue here are

13

topics 6, 16, and 18.  The Court notes, however, that there is a clear indication that the parties agreed that topic 16 would be subsumed by topic 6, therefore there is no need to address topic 16 specifically.  (*See* Dkt. #117-1 at 216.)

The parties' notes indicate that topic 6 was narrowed to "tasks the Defendants believed Mr. Brooks unable to complete and which in any way influenced Defendants' decision to terminate his employment." (Dkt. #117-1 at 213.)  Topic 18 was narrowly defined, by plaintiff, "to explaining the lifting requirements of Mr. Brooks' job and how often, including by comparison to other employees in same or similar roles, he was required or expected to perform lifting duties."  (Dkt. #117-1 at 217.)  The proposed questions fall outside these narrow topics.

The Court has reviewed the deposition testimony supplied by both parties in relation to the questioning regarding lifting restrictions and essential functions of the position held by plaintiff.  Plaintiff's counsel sought and was provided with extensive testimony regarding the functions of the position that required lifting 20 or more pounds. (Dkt. #122-10 at 8-30.) Plaintiff's counsel even took the time to provide the deponent with a precise list of the functions the deponent had mentioned in response to the question. (Dkt. #122-10 at 27.)  Defendant argues that the questioning regarding what plaintiff was unable to do following his lifetime lifting restriction was asked and

14

answered.  Defendant argues that any of the tasks that have been identified as requiring lifting 20 pounds or more, would, by virtue of that fact, be functions plaintiff could not complete in light of his lifting restrictions.

As to topic 18, plaintiff sought an answer regarding whether it was an undue burden on other employees when they were asked to assist plaintiff with lifting protective guarding from conveyors.  (Dkt. #115-1 at 19.)  It is clear from reading the note appended to topic 18, in plaintiff's own exhibits, that the question was beyond the scope of topic 18.  While the original topic mentioned questions of "undue burden," the topic was narrowed by agreement and the reference to the issue of undue burden was eliminated.  (Dkt. #117-1 at 216-17.)  It was not improper for defendant to object to any of the specific questions identified by plaintiff regarding the lifting restrictions and the essential functions. Having agreed to a narrower topic and confirmed that agreement in writing, plaintiff's counsel cannot expand the agreed upon scope of the topic.

The final dispute in relation to the deposition of Mr. Morzello relates to the scope of topics 5 and 15 as written, amended, and discussed via email.  Plaintiff argues that the topics permitted a line of questioning related to "what discussions were had or factors considered in granting or

denying potential accommodations" pursuant to topic 15 (Dkt. #115-1 at 22.)  Specifically, plaintiff argues that discussion of the "role the defendant played" in the decisions to fire or not transfer plaintiff would clearly include the questions regarding the content of the discussions and factors that played a part in that role.  Plaintiff goes on to provide the text of topic 5, as amended, from the April 13, 2023 notice sent from plaintiff to defendant and includes statements from defense counsel sent via email on April 25, 2022.[6]  (Dkt. #115-1 at 23.) Plaintiff argues that topic 5 would also allow questions regarding discussions that related to plaintiffs' ability to be transferred to or perform certain roles.

Defendant, however, has included as an exhibit and quoted an email that was sent by plaintiff's then co-counsel which clearly indicates an agreement to narrow the scope of topic 5. (Dkt. #112 at 24; dkt. #122-9 at 3.)  Further, there is a transcript from the Rule 30(b)(6) deposition of Mr. Morzello. In the transcript, defense counsel clearly read the language of the parties' agreement into the record.  (Dkt. #122-10 at 40.)

---

[6] The Court notes, per the oral argument on other aspects of this motion to compel, it was clear that the 30(b)(6) topics had been altered and changed many times over the course of intense and lengthy negotiations between counsel.  As discussed with the parties, the proper course would have been to issue final notices of deposition incorporating all changes and outlining the final agreed upon topics.  Without doing that, the Court was left with the unenviable task of having to parse the language of the noticed topics and lengthy and terse emails exchanged by counsel to determine the appropriate scope of the topics.  Additionally, it makes reliance, by either party, on the topics as noticed nearly pointless.

16

The email language that was read into the record at the deposition, and included as an exhibit, is very clear and lacks any need for interpretation.  Per the email, in order to address topic 5 the deponent should be prepared to testify to

> (i) who participated in the discussion and decision as to where to accommodate Mr. Brooks when he sought to return from his first hernia surgery in 2018 (and early 2019), (ii) who was involved in the discussions as to whether to, and decision to not, accommodate Mr. Brooks when he sought to return from his hernia surgery in 2019, and (iii) who was involved in the discussion and decision to terminate Mr. Brooks in 2019.

(Dkt. #122-9 at 3.)  The narrowed agreement clearly indicates that topic 5, as narrowed, gave plaintiff the right to inquire as to who was involved in any decisions related to plaintiff. Not what the content was of the discussions related to plaintiff's employment situation.  Further, topic 15 as noted above, deals with the "role" the deponent company played.  While plaintiff attempts to broaden the idea of "role" to include questions about what discussions were had, that is a bridge too far.  Defining the role a party played would include questions about things like whether they were involved and potentially the level of their involvement as to final decision making, not what discussion were being held in making such decisions.

For the reasons stated, plaintiff's motion to compel further 30(b)(6) testimony from WB is denied.

IV.   **Conclusion**

To be clear, plaintiff's motion is granted narrowly, in part.  Plaintiff will be permitted to conduct a 30(b)(6) deposition of on individual identified by defendant to discuss the core topics 13 and 14 as detailed above.  This deposition will relate to WT, WB, and WES.  For all other purposes, discovery is closed.

This is not a Recommended Ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED at Hartford, Connecticut this 12th day of December, 2023.

```
_____/s/_____
Robert A. Richardson
United States Magistrate Judge
```