**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOHNNY BROOKS,
*Plaintiff*,

v.

WHEELABRATOR BRIDGEPORT LP, et al.,
*Defendants*.

Case No. 3:20-cv-1716 (OAW)

**ORDER**

Before the court is Defendants' Motion for Summary Judgment ("Motion"), ECF No. 150, as well as Defendants' Motion to Strike, ECF No. 162. The court has reviewed the Motion, Plaintiff's opposition, ECF No. 151 (hereinafter "Opp."), Defendants' reply, ECF No. 158, Plaintiff's sur-reply, ECF No. 161, as well as the record in this case. The court also has reviewed Defendants' Motion to Strike, ECF No. 162 and Plaintiff's reply, ECF No. 163. After careful review of these materials, the Motion hereby is **GRANTED** and Defendants' Motion to Strike also is **GRANTED.**

## I. BACKGROUND[1]

The facts set forth below are taken primarily from the parties' Local Rule 56(a) Statements and exhibits and are undisputed unless otherwise stated. Pursuant to District of Connecticut Local Rule 56(a)1, each material fact set forth in the moving party's Local Rule 56(a)1 statement and supported by the evidence "will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2

[1] All pagination herein is as generated by the court's CM/ECF system, and from any document therein.

Statement" of the non-moving party. D. Conn. L. Civ. R. 56(a)1. Therefore, where Plaintiff "fails to appropriately deny material facts set forth" in Defendants' Rule 56(a)(1) statement, "those facts are deemed admitted." *Barone v. Judicial Branch of Conn.*, No. 3:17-cv-644 (VAB), 2019 WL 7283383, at *11 (D. Conn. Dec. 27, 2019) (citation modified).

**A. <u>Plaintiff's Employment</u>**

Wheelabrator Bridgeport, L.P. ("WB") operates a "waste-to-energy" plant in Bridgeport, Connecticut. Defs.' Local Rule 56(a)1 Statement of Undisputed Facts ¶ 1, ECF No. 150 (hereinafter "Defs.' SOF") ¶ 1. Wheelabrator Technologies Holdings, Inc. ("WT") is a company; whether it is related to WB or employs individuals is disputed. *Id.* ¶ 2; Opp. ¶ 2. WB alleges that Plaintiff "also named" WT because "he personally believed the two defendants to be the same entity." Defs.' SOF ¶ 3. Plaintiff "admits that he was jointly employed" by WB and WT. Opp. ¶ 3. Plaintiff worked as a Utility Operator worker at WB's Bridgeport facility from July 2001 to December 2019. Defs.' SOF ¶ 6.

**B. <u>Utility Operator Job Requirements</u>**

Plaintiff was "broadly responsible" for maintaining WB's workspace, including "operating and maintaining the air compressors, water pumps, air pollution control equipment and vibrating conveyors used to move ash and large pieces of metal throughout the facility." *Id.* ¶ 8. Defendants assert that an essential function of the utility operator position involves "the ability to lift up to 50 [ ] lbs." and using a "wide range of hand tools exceeding 20 lbs." *Id.* ¶ 9. Defendants assert that utility operators were responsible for "manipulating large pieces of equipment requiring the manpower of at least 2 to 6 employees simultaneously." *Id.* ¶ 10. Defendants assert that the "availability

of mobile assistive devices did not negate the need to manually lift up to 50 lbs for most tasks." *Id.* ¶ 11. Plaintiff alleges that "[a]ll essential functions of the utility operator role could be completed without lifting 20 lbs, and certainly . . . did not require lifting 50 lbs," and that equipment "could be used to conduct any lifting associated with these tasks and it was typical to perform the tasks as part of a team of two or more people." Opp. ¶ 9.

### C. 2018 Diagnosis & First Term of FMLA Leave

Plaintiff was diagnosed with a hernia that "required immediate medical intervention" in August 2018. Defs.' SOF. ¶ 13. After surgery, he required a leave of absence to recover. *Id.* ¶ 14; ECF No. 150-3 at 102–03. Plaintiff requested and received a ten-week medical leave of absence under the Family and Medical Leave Act ("FMLA"). Defs.' SOF. ¶ 15. Plaintiff alleges that WB "delayed" his return when he "sought to return to work." Opp. ¶ 15.

### D. Plaintiff's Return to Work

When Plaintiff was cleared by his doctor to return to work, his doctor submitted paperwork to CIGNA (WB's third-party leave administrator), which recommended a "lifetime lifting restriction of 30 lbs." Defs.' SOF ¶ 16. CIGNA contacted one of Plaintiff's supervisors, Meghan Martineau (WB's occupational nurse), to determine whether a 30-pound restriction could be accommodated. *Id.* ¶ 14, 17. Plaintiff alleges he also contacted Martineau regarding his accommodation request. Opp. ¶ 17. Martineau's role in the accommodation process was to "help facilitate discussions affecting employee health and safety." Defs.' SOF ¶ 18.

Martineau communicated with Phil Schwer (WB Plant Manager) and Tony Morzello (WB Operations Manager) on September 27, 2018, to "assess" whether WB could

accommodate a 30-pound lifting restriction. Defs.' SOF ¶ 19; ECF No. 150-3 at 9 (showing Schwer's job title); *id.* at 17 (showing Morzello's job title). Defendants assert that Martineau was unaware that the restriction was a lifetime restriction. *Id.* Plaintiff alleges that Martineau was aware that the lifting restriction was lifetime. Opp. ¶ 19. Schwer "responded quickly" to Martineau and expressed his "willingness to accommodate this general restriction but inquired as to the intended duration." Defs.' SOF ¶ 20. The parties dispute whether Martineau "emailed management" that Plaintiff had a lifetime lifting restriction. Opp. ¶ 20.

Defendants assert that Plaintiff "unilaterally decided to dispute the limitation with his doctor as he felt it was unnecessarily restrictive." Defs.' SOF ¶ 21. Plaintiff alleges that WB had its consultant reach out to Plaintiff's doctor to modify his restriction, and Plaintiff only talked with his doctor after WB reached out. Opp. ¶ 21. Defendant alleges that Plaintiff's doctor "agreed to modify the original restriction at Plaintiff's request." Defs.' SOF ¶ 22. The new restriction permitted Plaintiff to lift 50 pounds "with assistance," and that it "is suggested that he use an abdominal truss/binder." ECF No. 150-3 at 14.

Defendants allege that Plaintiff did not suffer any "negative consequences" from his lifting restriction or taking FMLA leave. Defs.' SOF ¶ 24. Plaintiff alleges that he was "treated worse by management as a result of his FMLA leave and lifting restriction." Opp. ¶ 24. Plaintiff also alleges that WB denied Plaintiff assistance despite repeated requests. Opp. ¶ 25. Defendants allege that Plaintiff confirmed in his deposition that "he received a positive response" from WB, "felt supported," and received assistance on several occasions. Defs.' SOF ¶¶ 26–28. Plaintiff denies these facts, alleging that WB "responded negatively and treated" Plaintiff poorly. Opp. ¶ 26–28.

Defendant alleges that it "was not always possible for Plaintiff to receive immediate assistance from his peers," and that Plaintiff "may have been the only person available at any given time." Defs.' SOF ¶ 29. Plaintiff denies this fact, alleging that he was denied assistance and accommodation. Opp. ¶ 29. Defendant alleges that "[t]he support continued when Plaintiff realized that he had developed an additional hernia and would require further surgery in September of 2019." Defs.' SOF ¶ 32. Plaintiff denies this fact, alleging that his hernia was caused by WB's failure to accommodate him. Opp. ¶ 32.

### E. <u>Plaintiff's Second Term of FMLA Leave & Return to Work</u>

Plaintiff requested and was approved to take additional FMLA leave from September 18, 2019, to December 5, 2019, to recover from his second surgery. Defs.' SOF ¶ 33. Before returning to work, Plaintiff requested a 20-pound lifting restriction. Opp. ¶ 34. Defendants allege that WB "never contemplated providing Plaintiff a lifetime limitation that prevented him from ever performing the lifting required of his position." Defs.' SOF ¶ 36. Plaintiff denies this fact, alleging that the 2018 accommodation request included a request for a lifetime lifting restriction. Opp. ¶ 36.

Plaintiff spoke to Morzello and Martineau regarding his doctor's recommendation. Defs.' SOF ¶ 39. Defendants allege that Martineau "expressly confirmed that she did not believe it was appropriate to put him at risk by asking him to get different restrictions." Defs.' SOF ¶ 40. Plaintiff alleges that WB "rushed to terminate" Plaintiff "without evaluating whether he could do the job with the requested restrictions and without exploring alternative accommodations." Opp. ¶ 40.

Defendants allege that they "made the decision to terminate Plaintiff's employment because no reasonable accommodation existed that would allow Plaintiff to complete the

essential lifting function of his position in any capacity at any point in the future." Defs.' SOF ¶ 41. Plaintiff denies that fact and alleges that Plaintiff could perform all essential functions of the position without lifting more than 20 pounds, and that WB fired Plaintiff without "ever concluding that he couldn't complete the essential functions of his position and without evaluating alternative accommodations." Opp. ¶ 41. Plaintiff also alleges that there was an open "APO role he could transfer to as an accommodation," and that Martineau and HR Manager Will Ruggiero were "also involved in the decision to deny the accommodation" request and to "terminate" Plaintiff. *Id.* ¶¶ 18, 41.

Defendants notified Plaintiff on November 20, 2019, that he would be terminated, but continued his employment through December 6, 2019, after his FMLA benefits ended. *Id.* ¶ 42. A position that would accommodate Plaintiff's lifting restriction opened after Plaintiff was terminated. Defs.' SOF ¶¶ 43–44. Defendants allege that Schwer "promptly notified his team of the open position and specifically requested" that Morzello reach out to Plaintiff "to assess his interest in returning to work." *Id.* ¶ 45. Plaintiff alleges that Morzello did not offer the open job to Plaintiff. Opp. ¶ 45. Defendants allege that Morzello "did reach out as requested," and that Plaintiff "ultimately decided not to pursue the opportunity." Defs.' SOF ¶ 47. Plaintiff denies that fact, alleging that Morzello did not offer Plaintiff the position, and that "at that time the position didn't even exist." Opp. ¶ 47. Defendant alleges that Plaintiff "did not like the hours and pay" of the new position, but that it was "speculative because he did not actually inquire into any specifics regarding the position," as he was "upset" and "had no interest in returning." Defs.' SOF ¶ 48. Plaintiff alleges that he requested transfers several times prior to his second term of FMLA leave. Opp. ¶ 53. Defendants allege that Plaintiff did not raise his concerns regarding

his alleged mistreatment during the November 2019 call where he was informed that he would be terminated. Defs.' SOF ¶ 54. Plaintiff denies that fact and alleges that "Plaintiff asked for multiple potential accommodations and expressed concerns." Opp. ¶ 54. During his deposition, Plaintiff responded "no" when asked whether he "believed that [he] was retaliated against in any way for requesting an accommodation." Defs.' SOF ¶ 55; ECF No. 150-3 at 171. Defendants allege that Plaintiff received his requested FMLA benefits, and "did not raise any concerns during the course of his employment that he did not receive the FMLA benefits to which he was entitled." Defs.' SOF ¶ 57. Plaintiff alleges that he "raised concerns about Company's failure to timely restore him to his position after his FMLA leaves." Opp. ¶ 57.

### F. <u>Plaintiff's Allegations</u>

Plaintiff alleges that the job description containing a 50-pound lifting restriction was "not used in the Bridgeport facility during the relevant time and was totally inaccurate." *Id.* ¶ 49. Plaintiff alleges that the utility operator position varied from plant to plaint, including the essential functions of the job and lifting requirement. *Id.* ¶ 50. Plaintiff alleges that WB "regularly used a consultant, Dr. Hoffman, to contact the doctors of employees seeking to return with disability restrictions to clarify and suggest modifications to their accommodation requests." *Id.* ¶ 69. Plaintiff alleges that WB "harassed, retaliated against, and fired employees who reported disabling work-related injuries and/or took protected medical leaves of absence," and denied disability-related accommodations to another employee. *Id.* ¶¶ 118–19. Plaintiff also alleges that "other employees were afraid to report to management work-related disabling injuries because they feared discrimination and retaliation." *Id.* ¶ 120.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue as to any material fact and it is clear that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view "the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998).

The moving party has the burden of showing that no genuine issue of material fact exists. "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party meets its burden, the non-moving party must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

To defeat a motion for summary judgment, the non-moving party must demonstrate there is a genuine dispute of material fact for trial. He must offer "significant, probative evidence on which a reasonable fact-finder could decide" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256–57. He may not "merely rely upon the allegations contained in the pleadings that raise no more than 'some metaphysical doubt as to the material facts.'" *Anderson v. Romano*, 2010 U.S. Dist. LEXIS 120395, at *7–*8 (S.D.N.Y. Oct. 22, 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986)). Summary judgment is appropriate if the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex*, 477 U.S. at 322).

Finally, the United States Court of Appeals for the Second Circuit instructs district courts to be cautious of granting summary judgment in employment discrimination cases "where the employer's intent, motivation, or state of mind is [the material fact] at issue." *Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 709 (S.D.N.Y. 2013). At the same time "[t]he court's role is to prevent unlawful [employment] practices, not to act as a superpersonnel department that second guesses employers' business judgments." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (citation modified).

## III. <u>DISCUSSION</u>

### A. <u>Job Description Dispute</u>

Plaintiff, in his memorandum in opposition, asserts that "there is a factual dispute over whether the job description is even an authentic document, and if so, which version of it is the authentic version in force at the time" of Plaintiff's termination. Opp. at 18–19. Defendants argue that the authenticity of the job description is not legitimately in dispute, and that the authenticity of the job descriptions "were the subject of extensive motion practice." ECF No. 158 at 2 n. 2, 8–10.

The court notes that the job description dispute was subject to very extensive briefing and argument before United States Magistrate Judge Richardson. *See, e.g.*, ECF Nos. 63, 83, 98, 104. There, Plaintiff asserted that Defendants' job description was inauthentic or inaccurate. ECF No. 63. It appears from the record that Defendants originally produced a job description for a different facility. ECF No. 158-1 at 16. Plaintiff

raised his concerns about the job posting and sought a copy of the job description that was in effect for the specific Bridgeport facility. ECF No. 63 at 7 (noting that Defendant initially provided a job description for an incorrect office location). Defendants agreed to produce copies of the job descriptions in effect in 2018 and 2019, as well as copies of those documents with the metadata preserved, in June 2022. ECF Nos. 83, 98, 104 (noting that Plaintiff's numerous discovery motions were mooted, as Defendants agreed to provide the documents).

Defendant produced copies of the job description in effect at the Bridgeport facility in 2018 and 2019, which are identical except for the bottom right corner of Exhibit G, which shows "Rev. 4/27/2022," and Exhibit H, which shows "Rev. [ DATE \@ "M/d/yyyy" ] [PAGE * MERGEFORMAT ]." ECF No. 150-3 at 22–28. Martineau, in her deposition, explained that Exhibit G contained "4/27/2022" because document auto populated with the date the document was accessed. ECF No. 150-3 at 59–64. She testified that she accessed the document to print it and produce it in discovery, and that the document had last been modified in 2017. *Id.*

Plaintiff cites Ruggiero's testimony in support of his assertion, claiming that his testimony establishes that the job description was inauthentic. Opp at 19, n.19. However, Ruggiero more fully testifies that "[t]he job description, it looks, you know, basically like what we used when I was there. The duties and responsibilities, essential functions I can't speak to" because Ruggiero did not "know the job." ECF No. 151-9 at 246–49. Ruggiero also testified that he believed the utility operator role reported to a different company official during his time at WB but again reiterated his lack of knowledge about whether the essential functions of the position had changed. *Id.* at 247.

In sum, there was extensive briefing and argument over the authenticity of the job description, and Defendants were ordered to produce the job descriptions used in 2018 and 2019, as well as copies of those documents with the preserved metadata. *See* ECF Nos. 63, 83, 98, 104. The court concludes that Plaintiff's argument regarding the inauthenticity of the job description had been previously settled, as Defendants agreed to produce the documents that Plaintiff sought, and in any event, Martineau testified under penalty of perjury that the documents that were produced were authentic. ECF No. 150-3 at 59–64; *Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 262 F. Supp. 2d 50, 60 (S.D.N.Y. 2003) (finding that it was "disingenuous and wasteful for plaintiff to object" that the documents were not authenticated, because the "appearance of these documents and the circumstances" show that the documents were authentic, as defendant's employee attested that "each of the documents is a true and complete copy" of the documents); *Bieda v. J.C. Penney Commc'ns, Inc.*, No. 1:92-cv-5910, 1995 WL 437689, * 9 n. 2 (S.D.N.Y. July 25, 1995) (finding that there was sufficient evidence of authenticity based, in part, on the appearance of the documents and defendant's interrogatory responses regarding the documents). There is simply no genuine dispute on this issue.

**B. <u>Motion to Strike</u>**

Defendant moves to strike four of the affidavits from former employees James Hawkins, John Wagner, Lennon Gaymon, and Roy Kelly, attached to Plaintiff's opposition to the motion for summary judgment under Rule 37 of the Federal Rules of Civil Procedure. ECF No. 162. Plaintiff offers these affidavits as evidence that lifting 50 pounds was not an essential function of his utility operator position. ECF No. 151 Exs. 4–7 (July 29, 2024). Defendants object to the consideration of these statements because

Plaintiff failed to disclose them during discovery, which had closed long before then. *See* ECF Nos. 136 (Dec. 12, 2023).

**1. Failure to Disclose**

"Pursuant to Federal Rule of Civil Procedure 37(c), 'if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.'" *Haughton v. Town of Cromwell*, No. 3:14-cv-1974 (VLB), 2017 WL 2873047, at *2 (D. Conn. July 5, 2017), *aff'd*, 735 Fed. Appx 27 (2d Cir. 2018) (quoting Fed. R. Civ. P. 37(c)). "Rule 26(a) requires, *inter alia*, the disclosure of individuals likely to have discoverable information, and Rule 26(e) requires parties to correct or supplement their Rule 26(a) disclosures and their discovery responses, upon learning 'that in some material respect the disclosure is incomplete or incorrect.'" *Id.* (citation modified) (quoting Fed. R. Civ. P. 26(a)(1)(A), (e)(1)(A)); *see also* Fed. R. Civ. P. 26(e)(1)(A) (requiring a party "who has responded to an interrogatory, request for production, or request for admission . . . [to] supplement or correct its disclosure or response" if the party learns that the disclosure is incomplete or incorrect, and if the additional information "has not otherwise been made known to the other parties during the discovery process").

Plaintiff argues that Rule 37(c) is not implicated here, as the parties "waive[d] the Initial Discovery Protocols," and Rule 37(c) only applies to Rule 26 initial disclosures. ECF No. 163-1 at 1–2. However, Rule 37(c) applies when a party fails to provide information or identify a witness as required by Rule 26(a) or (e), and Rule 26(e) includes any party "who has responded to an interrogatory, request for production, or request for

admission." Fed. R. Civ. P. 26(e)(1)(A); *see also Gambino v. Payne*, No. 12-cv-824, 2016 WL 11976184, at *3 (W.D.N.Y. June 29, 2016) (noting that Rule 26(e) requires a party to "timely supplement" Rule 26(a) disclosures "*and its responses to certain types of discovery requests*," and citing Rule 26(e)(1)(A), which states that a party "who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect") (citation modified). Accordingly, Rule 37(c) is implicated here, under Rule 26(e).

In considering whether to exclude undisclosed evidence, the court must consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Haas v. Delaware & Hudson Ry. Co.*, 282 Fed. Appx. 84, 86 (2d Cir. 2008) (citation modified) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)). "The purpose of the rule is to prevent the practice of sandbagging an opposing party with new evidence." *Id.* (citation modified). "No showing of bad faith is required to exclude evidence under Rule 37." *Haughton*, 2017 WL 2873047, at *2.

Plaintiff offers the following explanation for his failure to produce the statements: (1) Defendants did not provide Rule 26 initial disclosures to Plaintiff and (2) Defendants' interrogatory did not explicitly invoke Rule 26 and was "notably different from the initial disclosure obligations contained in Rule 26." ECF No. 163-1 at 2–3. Plaintiff also argues that he "diligently identified numerous individuals, including at least one of the Affiants, in response to the Interrogatories propounded by Defendants." *Id.* at 3 (referencing ECF

No. 158-1 Exs. I, J), 4 (referencing ECF No. 159-2 Ex. 46). However, the court does not see such reference upon review of the cited materials. *See also* ECF No. 161-1. (identifying Plaintiff, Morzello, Chris Ford, Schwer, Dr. Vanita Ahuja, Dr. Anna Zimmerman, Dr. Andrew Dhanasopon, and, at 6, "Any currently unidentified members of the Defendants' Human Resources and Management Teams").

However, in another exhibit, in response to Defendants' interrogatory, which asked Plaintiff to:

> Identify any and all current or former employees of Wheelabrator Technologies with whom you have communicated, contacted, discussed, reported or otherwise made known, in writing (including but not limited to by e-mail or text message) or orally (including but not limited to voice mail), any of the factual occurrences upon which you base your allegations in the Complaint and describe in detail the date and form of the communications and the substance of such communications

Plaintiff identified Wagner as someone with whom he had communication regarding Plaintiff's "disability diagnosis and discussions of his lifting restriction in the workplace." ECF No. 159-2 (Ex. 46) at 8. Plaintiff also identified Wagner by name in his deposition, who was his supervisor for a period of time. *Id.* Ex. 48 at 197 (ECF No. 159-2 at 140). Defendants asked if he had conversations with Wagner related to his hernia or "need for an accommodation." *Id.* at 198. Plaintiff testified that Wagner asked Plaintiff about his hernia and disability, "the lifting, how much [Plaintiff] could lift," and noted that Wagner would assist Plaintiff when he needed help with "the beams and stuff." *Id.*

Plaintiff argues that Defendants did not ask Plaintiff in his deposition whether there were other employees with relevant information related to lifting duties, and never "sought to elicit . . . a complete list of potential witnesses." ECF No. 163-1 at 4. However, this argument is disingenuous. Defendants explicitly asked for "any and all current or former

employees of Wheelabrator Technologies with whom you have communicated, contacted, discussed, reported or otherwise made known, in writing (including but not limited to by e-mail or text message) or orally (including but not limited to voice mail), any of the factual occurrences upon which you base your allegations in the Complaint . . . and the substance of such communication." ECF No. 159-2 at 6 (Ex. 46). This question sought every individual with whom Plaintiff communicated regarding the factual occurrences in his complaint, which is specifically based on the alleged discrimination and retaliation from Plaintiff's requested lifting restrictions. Defendants also requested that Plaintiff "[i]dentify each and every person whom you believe has knowledge or information concerning and/or related to the subject matter of this action or the facts alleged in the Complaint and describe in detail the nature of each person's relevant knowledge or information." ECF No. 158-1 at 5 (Ex. I ¶ 2). Therefore, Plaintiff's argument that Defendants did not ask for other employees with relevant information related to lifting duties is uncompelling, Plaintiff's justification is insufficient, and the first factor weighs in favor of exclusion for all the affidavits, save Wagner's.

The second factor weighs in favor of exclusion as to all four affidavits, as the information is not very important when examined in the context of the record. Defendants provided a job description, which clearly states that the physical demands of the job include the ability to lift 50 pounds; the job description also states that "[r]easonable accommodations could be made to individuals with disabilities to perform the essential functions of the job." ECF No. 150 Exs. G, H. Plaintiff asserts that this job description is inauthentic and cites the lack of recognition of the job description by several of Defendants' employees as evidence. ECF No. 151-1 at 18; *id.* at 19 n.19–20; ECF No.

151-2 ¶¶ 9, 49. However, Defendants were previously ordered to produce the exact job descriptions Plaintiff seeks, and Plaintiff's prior motions regarding the job descriptions were denied as moot. *See supra* III.A. And, notably, Plaintiff himself testified that the job involved heavy lifting and that he had to ask off from several tasks because of his lifting restrictions. ECF No. 151-9 at 108 (showing Plaintiff testifying that "[t]here are frequent times when you have to lift heavy stuff"); *id.* at 120 (testifying that he had to ask off the water washing task "numerous times, because it "affected [his] ability to do that job"). Accordingly, the second factor weighs in favor of exclusion.

The third prong also supports exclusion as to all the affidavits, save Wagner's. Not only were three of the four former employees not disclosed as having knowledge of the case, their assertions about the essential functions of his utility operator position were unknown to the Defendants when they moved for summary judgment. If Plaintiff had disclosed these former employees to Defendants during discovery, they could have deposed them or conducted other discovery. Plaintiff's failure to disclose the statements is therefore prejudicial. *See Haughton*, 2017 WL 2873047, at *2.

As to the fourth prong, granting a continuance at this stage of litigation to permit discovery related to the four affidavits would cause substantial delay and inefficiency—the time period to complete discovery was extended four times and has been closed now for over two years. *See* ECF Nos. 137, 139. Taken together, these four factors are in favor of excluding these four affidavits under Fed. R. Civ. P. 37(c)(1). "Because Plaintiff's failure to disclose was neither substantially justified nor harmless, Plaintiff may not rely on these statements to support his opposition to summary judgment." *Haughton*, 2017

WL 2873047, at *3. Accordingly, Defendants' motion to strike (ECF No. 162) is **GRANTED**.

### C. Plaintiff's Affidavit

Defendants also argue that Plaintiff submitted an affidavit in his opposition to summary judgment which directly contradicts his prior sworn deposition testimony, and that the contradictory attestations should be disregarded. ECF No. 158 at 6. Plaintiff argues that his affidavit did not contradict his deposition testimony, "which was limited by the failure of Defendants' own attorney to ask questions about numerous potentially relevant subjects." ECF No. 161 at 9.

"[I]t is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (citation modified). "Rather, such affidavits are to be disregarded." *Townsend v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 09-cv-6018, 2012 WL 4510044, at *4 (W.D.N.Y. Sept. 28, 2012) (citing *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987)).

Here, Plaintiff submitted an affidavit in opposition to summary judgment. His affidavit was notarized and presumably prepared by his attorney. ECF No. 151-3 at 42. In his affidavit, Plaintiff unequivocally states that the utility operator position "primarily consisted of walking around the facility," "utilizing equipment," and "light manual work with one's hands." *Id.* at 10 ¶ 24. Plaintiff attests that "the job was not primarily physical and did not require heavy physical exertion or labor." ECF No. 151-1 at 13 n.16. Plaintiff further attests that success in the job "depended primarily on the knowledge, training, and experience of the utility operator . . . rather than the ability to lift heavy objects or engage

in other strenuous activity. The job did not require significant lifting, and certainly did not require lifting significant weight." *Id.* Plaintiff also attests that he was able to "successfully perform all essential functions of my position without lifting more than 30 lbs," and that he worked "as part of a two person utility operator team where we shared and assisted each other with any lifting." *Id.* at 14 ¶ 37. Plaintiff also attests that after his first hernia surgery, he was required to lift heavy weights "unexpectedly" and "without sufficient assistance." *Id.* ¶¶ 41–44, 50, 61, 63.

"This affidavit, however, is contrary to his sworn deposition testimony, in which he testified under oath" that his position required heavy lifting. ECF No. 151-9 at 97–100; (showing Plaintiff testifying that he would apply to other jobs that were "lesser work, lesser lifting, just lesser of everything" compared to the work he "was actually doing as a utility operator"); *id.* at 102 (stating that he "was trying to get into a different position which was lighter work, not as physical" as the utility operator position); *id.* at 108 (showing Plaintiff testifying that "[t]here are frequent times when you have to lift heavy stuff"); *id.* at 120 (testifying that he had to ask off the water washing task "numerous times, because it "affected [his] ability to do that job"); ECF No. 158-1 at 26–27 (showing Plaintiff testifying that his job required him to lift things that weighed more than 30 pounds); *id.* at 30–41 (showing Plaintiff testifying that his job involved tasks that required heavy lifting, such as the water wash beam, ash buckets, and "[s]ome other things"); *id* at 44 (showing Plaintiff testifying that "[t]here are frequent times when you have to lift heavy stuff"). Plaintiff also, when asked whether he was "required to lift things" that he "medically should not have been lifting," responded "[n]o, not without accommodation or assistance." *Id.* at 38 (showing Plaintiff testifying that he "had accommodations as far as lifting the heavy

objects"). Plaintiff testifies repeatedly that his only issue with his accommodation was that at times "assistance was not readily available" because of the needs of the plant. *Id.* at 39–40, 42–43 (showing Plaintiff testifying that if his co-workers were "too busy doing something," he "had to wait for a prolonged time for them to help"); *see also id*. at 49–50 (showing Plaintiff confirming that no one at WB "ever insisted that [he] ignore the 30-pound lifting restriction and do something that exceeded that restriction"). Plaintiff also repeatedly testifies that he received assistance from WB following his first hernia surgery. *Id.* at 28–31, 49–50.

Plaintiff was asked during his deposition to clarify the inconsistency in his deposition testimony and the allegations in his complaint, to which he stated that maneuvering the water washing beams required him to lift more than 30 pounds at time. ECF No. 158-1 at 38–41; 61–65. But he did not describe a situation at all like the one described in the affidavit, wherein he alleged that he was repeatedly forced to violate his lifting restrictions despite raising his concerns to management. Nor did he allege that he was assigned tasks involving heavier lifting in retaliation for his accommodation. Instead, Plaintiff testified repeatedly that his position involved heavy lifting, that he was aided when it was available, and that he did not believe he was assigned harder tasks in retaliation for his accommodation. *Compare* ECF No. 151-2 ¶¶ 38–43, 50, *with* ECF No. 158-1 at 37–41, 47–50, 72–73. Plaintiff also provides a different explanation of the November 2019 call where he was terminated. Plaintiff, in his affidavit, attests that he proposed alternatives to try to save his job, including reaching out to WB's company doctor for "clarification" of his lifting restriction. ECF No. 151-2 ¶ 105. But he testified in his

deposition that the only accommodation discussed was his 20-pound lifting restriction request. ECF No. 158-1 at 52–63, 66.

Accordingly, the court will disregard the portions of Plaintiff's affidavit which contradict his sworn deposition testimony. *See Townsend*, 2012 WL 4510044, at *4.

### D. <u>Discrimination Based on Disability</u>

Plaintiff brings discrimination and failure to accommodate claims under the Americans with Disabilities Act ("ADA") and Connecticut Fair Employment Practices Act ("CFEPA"). Amend. Compl. ¶¶ 102–159.

The court first considers Plaintiff's claim that WB discriminated against him by failing to provide reasonable accommodation. An employer's failure to accommodate an employee may constitute disability discrimination under the ADA and CFEPA. *Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 86 (D. Conn. 2006) ("Failure to accommodate a disability constitutes discrimination under the ADA"); *see Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 415 (2008) ("[W]e adopt the commission's time-tested interpretation construing § 46a–60 (a)(1) to require employers to make a reasonable accommodation for an employee's disability"). To advance such a claim, the plaintiff must prove that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (internal quotation marks and citations omitted). At this stage, Plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his]

employment, including the existence of a vacant position for which [he] is qualified." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).

Here, the third and fourth prong are at issue—whether Plaintiff could perform the essential functions of his utility operator position, and whether WB refused to provide reasonable accommodation. ECF No. 150-1 at 19–20. Plaintiff argues he could perform the essential functions of the job without lifting more than 20 pounds, and that other utility operators were granted lifting restrictions and allowed to work "for many years without lifting." Opp. at 10–18, 20–21. Defendants counter, arguing that the record establishes that Plaintiff was unable to perform the essential functions of his position, and his requested accommodation for a lifetime lifting restriction constituted "an elimination of an essential function" of Plaintiff's job, and was therefore "unreasonable under the law." ECF No. 150-1 at 20–25.

"A plaintiff cannot be considered otherwise qualified unless he is able, with or without assistance, to perform the essential functions of the job in question. It follows that the plaintiff bears the burden of proving either that he can meet the requirements of the job without assistance, or that an accommodation exists that permits him to perform the job's essential functions." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137 (2d Cir. 1995) (citation modified). "The term 'essential functions' is not clearly defined in the ADA, which only contains guidance that consideration must be 'given to the employer's judgment as to what functions of a job are essential,' and the written description of the job provided in advertising and interviewing applicants." *Valenti v. SleepMed, Inc.*, No. 15-CV-1281 (JCH), 2017 WL 2945721, at *4 (D. Conn. July 10, 2017) (quoting 42 U.S.C. § 12111(8). "The court must give substantial deference to the opinion of the employer

with regards to whether a function is essential." *Id.* "It must be noted, however, that though reasonable accommodation may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring, reasonable accommodation does not mean elimination of any of the job's essential functions. *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991) (citing 45 C.F.R. § 84.12(b)).

The record establishes that an essential function of the utility operator position was to be able to "[l]ift heavy objects by hand or with power hoist," and listed "Lift 50 lbs" as a required physical demand of the job. Defs.' SOF Ex. H. The record also establishes that Plaintiff's first requested accommodation for a lifetime 30-pound lifting limit was ultimately modified to allow him to continue to lift 50 pounds with mechanical assistance in the form of a brace. Defs.' SOF Exs. A, C. Plaintiff's co-workers assisted him from time-to-time, *see* ECF No. 151-9 at 120, but ultimately, the accommodation still allowed him to lift 50 pounds permitting he used a brace. Defs.' SOF Exs. A, C.

Plaintiff's second accommodation request was entirely different. The requested accommodation asked that Plaintiff be exempt, for life, from lifting more than 20 pounds. ECF No. 150-3 at 154. Plaintiff's own testimony demonstrates that his position required heavy lifting, and that he had to ask off specific tasks that "affected [his] ability" to do his job "numerous" times, ECF No. 151-9 at 97–100; (noting Plaintiff testifying that he would apply to other jobs that were "lesser work, lesser lifting, just lesser of everything" he "was actually doing as a utility operator"); *id.* at 102 (stating that he "was trying to get into a different position which was lighter work, not as physical" as the utility operator position); *id.* at 108 (showing Plaintiff testifying that "[t]here are frequent times when you have to lift

heavy stuff"); id. at 120 (testifying that he had to ask off the water washing task "numerous times, because it "affected [his] ability to do that job").

Here, Plaintiff's 20-pound lifting restriction precluded him from engaging in heavy lifting, and the law does not require accommodations that involve "shifting responsibility for the lifting to other individuals." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d Cir. 1995) ("individuals whose physical condition precludes them from engaging in heavy lifting, and who seek jobs for which such lifting is shown to be an essential function, need not be accommodated by shifting responsibility for the lifting to other individuals"). Importantly, Plaintiff's second accommodation request did not include a similar modification as his first request, which permitted him to lift up to 50 pounds if he wore a brace. Necessarily, Plaintiff would have required assistance from others to accomplish the portions of his job requiring lifting more than 20 pounds, and Plaintiff himself testified he either required co-worker assistance or he had to avoid the task. ECF No. 151-9 at 120; *Borkowski*, 63 F.3d at 140; *see also Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 101 (2d Cir. 2003) (noting that plaintiff's assertion that he could perform the essential functions of his job was irrelevant, as the medical evidence established that he could not). Accordingly, as Plaintiff has not established that he could have performed his job with a reasonable accommodation, Defendants are entitled to summary judgment as to these claims.

As to his requests for reassignment to a vacant position, Plaintiff is correct that reassignment may be a reasonable accommodation. 42 U.S.C. § 12111(9). But he must establish "that a vacancy existed into which he or she might have been transferred." *Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000). To demonstrate a

vacant position existed, Plaintiff offers his own affidavit testimony, in which he testifies that he "requested transfers to numerous positions in the Company," specifically the Assistant Plant Operator (APO) positions, as it involved significantly less lifting, an "equipment operator role," a labor supervisor role, and a crane operator position. ECF No. 151-3 ¶¶ 43–60. However, Plaintiff's deposition testimony shows that Defendants reached out about a "scale operator position" on the night shift after he was terminated, but that he "never got back" to them about it, despite the fact that he believed that he could physically perform the job responsibilities, because he did not like the hours required or the pay. ECF No. 150-3 at 92–95.

This showing is insufficient. Plaintiff offers no additional evidence about the availability of these positions, no evidence that he was qualified for these roles, nor any evidence that he could perform their essential functions. Plaintiff's burden of persuasion "is not satisfied by mere speculation," therefore his argument fails. *Jackan*, 205 F.3d at 566; *see Cayetano v. Fed. Express Corp.*, No. 19-cv-10619, 2022 WL 2467735, at *5 (S.D.N.Y. July 6, 2022) ("Although it is undisputed that these positions were open, Cayetano offers no evidence that he was qualified for these jobs, or that he could perform their essential functions") (citation modified).

Accordingly, the court rejects Plaintiff's claim that WB discriminated against him by failing to provide a reasonable accommodation.

Next, Plaintiff's claim that Defendants otherwise discriminated against him due to his disabilities are incoherent and fail as a matter of law. To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) he is a person with a disability within the meaning of the ADA; (2) his employer is subject to the ADA and had notice of

Plaintiff's disability; (3) that with or without reasonable accommodation, he was qualified to perform the essential functions of the job at issue; and (4) that he suffered an adverse employment action because of his disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127,134 (2d Cir. 2008). Discrimination claims brought under the CFEPA "are construed similarly to ADA claims," therefore, the court will evaluate these counts simultaneously. *Hopkins v. New England Health Care Emps. Welfare Fund,* 985 F. Supp. 2d 240, 255 (D. Conn. 2013). The only difference in analysis is that the "CFEPA's definition of physical disability is broader than the ADA's." *Id.* (quoting *Beason v. United Techs.*, 337 F.3d 271, 277–278 (2d Cir. 2003)). The court presumes, without deciding, that Plaintiff establishes the first two factors.

Plaintiff argues that Defendants discriminated against him by "fail[ing] to accommodate and/or engage in an interactive process, . . . subjecting [Plaintiff] to adverse actions, including, but not limited to, a harassing and retaliatory environment, revocation of disability-related accommodations, and dismissal." Amend. Compl. ¶ 155. In his opposition filing, he argues that WB's failure to engage in an interactive process is evidence of disability discrimination. Opp. at 34. However, "there is no independent claim under the ADA for failure to engage in the interactive process." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86–87 (2d Cir. 2017). Plaintiff reiterates his claim that WB discriminated against him by failing to make a reasonable accommodation, and he suggests that Defendants' "refusal to accommodate [Plaintiff] in any way," including refusing to transfer him to open positions or engage "in any interactive dialogue, constitutes compelling evidence" that Defendants discriminated against Plaintiff due to his disability. ECF No. 151-1 at 34. At the end of the day, Plaintiff fails to plead facts showing that with or without

reasonable accommodation, he was qualified to perform the essential functions of the job at issue and that he suffered an adverse employment action because of his disability.

Plaintiff has not raised a genuine issue of material fact as to whether he suffered discrimination based on his own disabilities in violation of the ADA and CFEPA. Therefore, Defendants are entitled to summary judgment on these claims.

**E. <u>Retaliation under ADA</u>**

Plaintiff alleges that Defendants retaliated against Plaintiff for requesting accommodations and for opposing WB's "discriminatory actions." Amend. Compl. ¶¶ 167–69.

To establish a claim for retaliation under the ADA and the CFEPA, Plaintiff must present evidence showing (1) that he engaged in protected activity, (2) "that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 206 (D. Conn. 2013) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F. 3d 208, 223 (2d Cir. 2001)). If Plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Treglia v. Manlius*, 313 F.3d 713, 721 (2d Cir. 2002). The plaintiff "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id.*

As to the first factor, Plaintiff alleges that WB retaliated against him for exercising his rights under the ADA and because he opposed unlawful disability discrimination.

Amend. Compl. ¶¶ 167–69. Even presuming that Plaintiff can establish the first two elements, he fails to point to anything in the record, beyond his own deposition testimony, that either shows that WB took a retaliatory action in response to his opposition to unlawful disability discrimination, or that demonstrates a causal connection between Plaintiff's complaints and his termination. WB points towards the fact that Plaintiff's second lifting restriction necessarily meant that Plaintiff would not be able to perform the essential physical demand of the utility operator position as an alternative reason for the alleged adverse employment action. ECF No. 150 Exs. G, H. Further, Plaintiff testified that he did not believe that he was retaliated against for requesting an accommodation for his hernia. ECF No. 150-3 at 171.

Accordingly, Defendants are entitled to summary judgment on this claim.

**F. <u>Retaliation and Interference Related to FMLA</u>**

Plaintiff alleges that Defendants interfered and retaliated against him for requesting and utilizing FMLA leave. Amend. Compl. ¶¶ 183–85, 190–92. Defendants argue that Plaintiff failed to state a claim for interference and retaliation, as he received all the FMLA benefits that he requested and was entitled to receive. ECF No. 150-1 at 29–30.

**1. <u>Interference</u>**

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziado v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (citing 29 U.S.C. § 2615(a)(1)). "That requires the plaintiff to show 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the

defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Rivera v. Target Corp.*, No. 24-cv-6965, 2025 WL 1616863, at *6 (S.D.N.Y. June 6, 2025) (citation modified).

Here, Plaintiff alleges that Defendants terminated him while he was on FMLA leave and interfered with his "protected right to job restoration following an FMLA leave." Amend. Compl. ¶¶ 183–85. However, Plaintiff's FMLA interference claim "fails at the outset" because his record establishes that he received all of the FMLA leave that he was owed. *Rivera*, 2025 WL 1616863, at *6. Defendants terminated him on December 6, 2019—after he received all of the FMLA he had requested. ECF No. 150-3 at 16 (showing that Plaintiff's last date was December 6, 2019, and that he was "covered for FMLA thru 12/5").

The FMLA does require that employees who take FMLA leave be reinstated to a same or similar position; however, this requirement does not apply when the employee is "unable to perform an essential function of the position because of a physical or mental condition." 29 C.F.R. § 825.216(c); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999) (employee was not entitled under the FMLA to be restored to his former position, or another position, because "at the end of that [FMLA] period he remained unable to perform the essential functions" of his position).

Here, the record establishes, through both the job description and Plaintiff's own testimony, that Plaintiff's 20-pound lifting restriction meant that he could not perform the essential functions of his job. Although Plaintiff's earlier 30-pounds unassisted (50-pounds with a brace) lifting restriction was accommodated, Plaintiff's 20-pound lifting restriction did not contain any similar caveats. This restriction meant that he could no

longer meet the physical demands of the job, and he was not entitled to reinstatement to his position following his second FMLA leave because "at the end of that [FMLA] period he remained unable to perform the essential functions" of his position. *Id.*

Accordingly, Defendants are entitled to summary judgment on this claim.

**2. __Retaliation__**

To establish a claim for retaliation under the FMLA, courts use the *McDonnell Douglas* burden shifting test. *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004). Plaintiff must establish that (1) he exercised rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse action took place under circumstances that give rise to an inference of retaliatory intent. *Potenza*, 365 F.3d at 168; *Hewitt v. Triple Point Tech., Inc.*, 171 F. Supp. 3d 10, 19 (D. Conn. 2016). If plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Id.* at 19–20. Plaintiff then must produce evidence wherein a reasonable jury could find that the legitimate business reasons are pretextual. *Hewitt*, 171 F. Supp. 2d at 21. The evidence must be *sufficient*, not just "some evidence." *Id*.; *see also Serby v. N.Y.C. Dep't of Educ.*, 526 Fed. Appx 132, 135 (2d Cir. 2013).

Here, Plaintiff alleges that Defendants retaliated against him "for requesting, for seeking to exercise, and for utilizing FMLA leave and the FMLA right to job restoration," by terminating his employment. *Id.* ¶¶ 190–92. Even presuming that Plaintiff met the first three elements of the test, he does not show that any action that occurred supported an inference of retaliation for him having taken FMLA leave. Plaintiff received all his requested FMLA leave, and Defendants did not terminate Plaintiff until after his FMLA

leave ended. ECF No. 150-3 at 16 (showing that Plaintiff's last date was December 6, 2019, and that he was "covered for FMLA thru 12/5"); *id.* at 112–13 (showing Plaintiff testifying that he was never disciplined for taking leave); *id*. at 164–65 (showing Plaintiff testifying that he received all the FMLA leave that he requested); *id.* at 167 (showing Plaintiff testifying that he received two periods of FMLA leave for his hernia surgery, and that he "received all of the time off" that he requested "in accordance with [his] doctor's recommendations"); *see also Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 162 (S.D.N.Y. 2011) (dismissing claim as plaintiff did not establish that she was discharged for taking leave). Further, the record establishes that Plaintiff was not qualified for his position because he could no longer perform the physical demands listed in the job description. *Russell v. Drivers Mgmt., LLC*, No. 3:18-cv-682 (JCH), 2020 WL 7419664, at *11 (D. Conn. Feb. 11, 2020) (a FMLA retaliation claim requires plaintiff to establish that "at the time in question" they were qualified for the position "without any accommodation").

Accordingly, Defendants are entitled to summary judgment as to this claim.

## IV. <u>CONCLUSION</u>

For the reasons discussed herein, the court hereby **<u>GRANTS</u>** Defendants' motion for summary judgment **(ECF No. 150)** and Defendants' motion to strike **(ECF No. 162)**. The Clerk of Court is asked to please enter judgment consistent with this order and to close the case.

**IT IS SO ORDERED** in Hartford, Connecticut, this 26th day of October, 2026.

*/s/*

OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE